(No. 11907.—Reversed and remanded.)

C. W. McComb, Admr., *et al.* Plaintiffs in Error, *vs.* Robert H. Morford *et al.* Defendants in Error.

*Opinion filed April 17, 1918—Rehearing denied June 5, 1918.*

1. Wills—*testator's intention will be ascertained and given effect if possible.* The intention of the testator is to be ascertained from an examination of the language of the will and given effect unless it is contrary to public policy or some rule of law.

2. Same—*when gift of share of the proceeds of sale held after wife's death vests at testator's death.* The rule that a gift to a class does not vest until the time fixed for distribution is applicable to cases where it cannot be known until the time for distribution arrives who will answer the description, but where a testator provides for distribution of his estate in money after his wife's death, the sale clearly being postponed for the benefit of the estate, a gift of one-fifth of the proceeds to the heirs (meaning children) of a deceased daughter, who are definitely known and ascertained, is vested in each of said children at the testator's death, and the share of one of said children who dies before the time of distribution will descend to her heirs, including her father and a half-sister.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

ADLAI H. RUST, for plaintiffs in error.

STERLING, LIVINGSTON & WHITMORE, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to the Appellate Court for the Third District. The litigation arose over the disposition of the one-fifth part of an estate which Almira Dunbar would have received if she had been alive at the time of her father's death. Robert H. Baker, the father of Almira Dunbar, executed a will on March 4, 1902, and died May 24 following. He left a widow, Mary Baker, and three children, Joseph P. Baker, Christie Ann Critchfield and Leathe Scott, surviving him. Two daughters, Almira Dunbar and Kittie Samuels, predeceased him, both leaving children surviving. Almira Dunbar died before her father executed his will and left three children, who were alive at the time the testator made the will and at the time of his death. They were Flossie Dunbar, Charles R. Dunbar and Robert H. Morford. The will of Robert H. Baker was as follows:

*"In the name of God, Amen.*

"I, Robert H. Baker, of the town of Heyworth, in the county of McLean and State of Illinois, being of sound mind and memory, hereby make, publish and declare this to be my last will and testament, hereby revoking all former wills made by me.

*"First*—I direct that all my debts, of whatever nature, be fully paid and discharged, including funeral expenses.

*"Second*—To my wife, Mary Baker, I bequeath absolutely and in fee simple the following real estate: Lots 5-8 and 9, in block 5, in Frisby's addition to the town of Heyworth, being the place we now reside; also all the household goods therein. In addition I

bequeath to her full statutory dower in all my property, real and personal or mixed.

"*Third*—After the death of my wife, Mary Baker, I direct that all of my property, real and personal, shall be converted into cash as soon as the same can be done without loss to my estate, and be divided, share and share alike, between my children, as follows: Joseph P. Baker, Christie Ann Critchfield, Leathe Scott, the heirs of Almira Dunbar and the heirs of Kittie Samuels,—that is to say, that my entire estate shall be divided into five equal shares, each of my before enumerated children to receive one share and the heirs of my children now deceased shall receive, collectively, the share their deceased parent would have received, or if any of my children now living shall have died before the time of settlement, then their heirs shall receive, collectively, the share designated for their parents. For the purpose of carrying out the provisions of this my last will and testament, I here nominate and appoint my son, Joseph P. Baker, to be executor of my will, and hereby empower him and especially invest him with full authority to sell all of my real estate at public or private sale, as he may deem best, and to make deeds and conveyance for the same, with full power to sign all deeds, etc., necessary for the carrying out of these provisions. In case of his refusal to qualify, or of his death, then I invest my administrator *de bonis non* with the will annexed with the same authority.

"I direct that all my estate situated in the county of McLean and State of Illinois shall be held by my estate during the life of my wife.

"As I own at the present time certain lands in the county of Adair, in the State of Iowa, which I desire to dispose of, in case I should still own said lands at the time of my decease it is my last will that said lands in the county of Adair, in the State of Iowa, be sold as soon as the same can be done without loss to my estate and the proceeds to be divided at once among my children or their heirs as before directed, my wife reserving her statutory dower.

"In witness whereof I have affixed my signature and seal this 4th day of March, A. D. 1902.        Robert H. Baker. (Seal)"

The Iowa land referred to in the will was sold after the death of the testator and the proceeds distributed according to the directions of paragraph 3 of the will, each of the children of Almira Dunbar receiving his share.

After the death of the testator but about five years before the death of the widow, Flossie Dunbar, who was never married, died intestate, leaving as her heirs her brother,

Charles R. Dunbar, half-brother, Robert H. Morford, a half-sister, Dolores Dunbar, and her father, Benjamin G. Dunbar. Soon after the widow's death the land was sold and partial distribution of the proceeds made. The executor having died, the administrator with the will annexed reported that the share of Flossie Dunbar, had she lived, would have been $3117.82; that he had paid one-fifth of that sum to R. H. Morford and one-fifth to Charles R. Dunbar, and was in doubt as to whether the balance ($1870.68) should be paid to the same parties or to Benjamin G. Dunbar, father, and Dolores Dunbar, half-sister of Flossie, or to C. W. McComb, administrator of the estate of Flossie Dunbar, and asked an order of the county court directing to whom the money should be paid. The father and half-sister, Dolores, joined the administrator in the petition to the county court. Charles R. Dunbar and Robert H. Morford claimed the entire one-fifth part of the proceeds of the sale, to the exclusion of Flossie Dunbar's father and half-sister, Dolores, while the administrator of her estate and her father and half-sister, Dolores, claimed three-fifths of the share Flossie would have received if she had lived belonged to the father and Dolores and should be paid to Flossie's administrator for distribution in the settlement of her estate. The county court ordered the sum in controversy, amounting to $1870.68, paid to Robert H. Morford and Charles R. Dunbar, and this order was affirmed by the circuit court on appeal to that court. Plaintiffs in error appealed from the judgment of the circuit court to the Appellate Court for the Third District, and that court affirmed. the judgment of the circuit court.

Both parties agree that the gifts to the children and heirs of the children who were then dead were bequests of personal property and not of land. It is also agreed that the controlling question to be determined is the time of the vesting of the interest bequeathed to "the heirs of Almira Dunbar." Plaintiffs in error contend that under the will

the three children, who were the only heirs of the deceased daughter at the time the will was made and at the time of the testator's death, took a vested interest, and upon the death of Flossie Dunbar her interest descended to her heirs. Defendants in error contend that the gift to the heirs of the deceased daughter was to a class; that there are no words of devise except a simple direction to distribute at a specified time, and the gift did not vest until the time fixed for distribution.

It has been too often decided to require the citation of authorities, that the paramount rule in the construction of wills is to ascertain the intention of the testator from an examination of the language of the will and then give effect to such intention unless contrary to public policy or some rule of law.

Defendants in error contend that the bequest to the heirs of Almira Dunbar being a gift to a class, the construction of this will must be controlled by the application of the rule that where there are no words of devise except a simple direction to distribute the property at a specified time, the gift does not vest until the time fixed for distribution. This rule is applicable to all cases where it cannot be known until the time for distribution arrives who will answer the description of the class to whom the gift is made, and until that time the interest is contingent. This court said in *McCartney* v. *Osburn,* 118 Ill. 403: "As already seen, the general rule is that when there is a simple gift to a class, to be *paid* at a fixed time or upon an event or contingency which may happen after the death of the testator, and nothing appears to show a contrary intention, the gift will vest in interest at the testator's death, and the time of distribution, only, will be deferred. If, however, the element of futurity is annexed to the gift itself and is not merely indicative of the time of payment, or if the time of payment is made descriptive of the class that is to take, the gift will not vest in interest till the time so fixed for payment or

distribution has arrived." Discussing the rule where there is a direction to pay or distribute *in futuro,* this court said in *Carter* v. *Carter,* 234 Ill. 507: "But conceding that the devise is to a class and is simply a direction to divide the property at an appointed time, it is said in *Knight* v. *Pottgieser,* 176 Ill. 368, that this 'general rule is subject to an exception so well established and universally recognized as to practically constitute another general rule, which is: though a gift arises wholly out of directions to pay or distribute *in futuro,* yet if such payment or distribution is not deferred for reasons personal to the legatee but merely because the testator desired to appropriate the subject matter of the legacy to the use and benefit of another for and during the life of such other, the vesting of the gift in remainder will not be postponed but will vest at once, the right of enjoyment only being deferred,' "—citing *Scofield* v. *Olcott,* 120 Ill. 362, *Grimmer* v. *Friederich,* 164 id. 245, and *Carper* v. *Crowl,* 149 id. 465. In *Pearson* v. *Hanson,* 230 Ill. 610, it was said: "The other branch of the rule is, that if the payment was postponed for the convenience of the property or fund then there is an immediate vesting of the title and the postponement merely respects the time of enjoyment, even though there be no other gift than the general direction to pay or distribute at the appointed time."

At the time the will was made and at the time of the death of the testator Almira Dunbar was dead and her heirs were in being and definitely known. They were her three children, Robert H. Morford, (a son by a former marriage,) Flossie Dunbar and Charles R. Dunbar. The Iowa land was directed to be sold as soon as it could be done without loss to the estate and the proceeds distributed according to the direction of paragraph 3 of the will, reserving to the widow her statutory dower. That land was sold and Flossie Dunbar was paid her share of the proceeds. The testator owned about three hundred acres of farm land in McLean county, Illinois, and the will directed that it

should not be sold during the life of the widow. Whether the testator contemplated and intended that dower would be assigned and set off to the widow or whether he intended she should receive one-third of the rents and profits during her lifetime is not clear, though the latter seems the more reasonable construction, but we think this is immaterial in determining whether the sale and distribution of the proceeds of the land were postponed for the benefit of the estate or for reasons personal to the legatee. It seems plain that the reason for postponing the distribution was on account of the widow's interest. As long as she lived the land could not be sold with advantage to the estate and the postponement was for the benefit of the estate,—as much so as if she had been given a life estate in all the land. That the postponement of the time of distribution was not for reasons personal to the legatees is apparent from the fact that there was no postponement of the time of distribution of the proceeds of the sale of the Iowa land, and we can see no reason for distinguishing between the proceeds of that land and the Illinois land.

We construe the legacy to the heirs of Almira Dunbar to be a gift, not to a class the persons composing which could not be determined until a future time, but a gift to a number of persons then in being and definitely known,— as much so as if the testator had specifically named the three children of his deceased daughter, Almira, (*Auger* v. *Tatham,* 191 Ill. 296,) and that the gift was intended by the testator to, and did, vest in interest upon the death of the testator, but its enjoyment in possession was postponed until the termination of the widow's interest.

The judgments of the Appellate, circuit and county courts are reversed and the cause remanded to the county court, with directions to make an order for distribution in accordance with this opinion.

*Reversed and remanded, with directions.*