## 12378

### WOODRUFF OIL & FERTILIZER CO *ET AL.* v. ESTATE OF YARBOROUGH *ET AL.*

#### (142 S. E., 50)

1. WILLS—INVALIDITY OF ULTERIOR PROVISION IN WILL FOR REMOTENESS DOES NOT DEFEAT PRIMARY PROVISION WHICH SERVES INDEPENDENT PURPOSE.—Where ulterior provision in will is void for remoteness primary provision is not necessarily defeated, but primary provision will be sustained if it subserves a purpose of its own which it could serve if ulterior provision had not been made.

2. PERPETUITIES—PROVISION FOR DISTRIBUTION AT END OF 50 YEARS, AMONG TESTATOR'S SURVIVING CHILDREN AND ISSUE OF DECEASED CHILDREN HELD VOID FOR REMOTENESS.—Provision in will devising property to be equally divided at end of 50 years among testator's surviving children and issue of deceased children per stirpes *held* void as violating rule against perpetuities, since vesting of estate is postponed for arbitrary period.

3. WILLS—VALIDITY OF PROVISION IN WILL FOR DISTRIBUTION OF RENTS AND PROFITS DURING TRUST TERM HELD NOT AFFECTED BY FACT THAT PROVISION WHICH DISPOSED OF CORPUS WAS VOID.—Validity of provision in will devising testator's land to executor for 50-year period to pay over the rents and profits to testator's surviving children and the issue of his deceased children per stirpes *held* not affected by fact that ulterior provision, in following paragraph in will, devising such property to be divided among surviving children equally and issue of deceased children per stirpes at end of 50-year period, was void, since existence of the ulterior provision was not essential to the existence of the primary provision.

4. WILLS—TESTATOR'S INTENTION TO DISPOSE OF ENTIRE ESTATE DOES NOT RENDER PROVISIONS OF WILL INSEPARABLE.—Fact that testator intended to dispose of his entire estate by will does not render provisions of will parts of single plan or scheme and inseparable and interdependent so that both must fall together in case one is void.

5. TRUSTS—VALID TRUST IS NOT NULLIFIED MERELY BECAUSE INSTRU-
MENT CONTAINS VOID PROVISION FOR ULTERIOR DISPOSITION OF
CORPUS.—Valid trust is not nullified merely because the instrument
creating the trust contains void provision for the disposition of the
corpus after the expiration of the trust term, and trust term, if
valid, must be carried out regardless of validity of the ulterior
disposition.

6. WILLS—DEVISE OF INCOME OVER 50-YEAR PERIOD HELD VALID AS
TRUST FOR 21 YEARS ONLY.—Provision of will devising lands to
executor in trust for distribution of rents and profits among testa-
tor's surviving children and the issue ·of his deceased children per
stirpes over 50-year period *held* to create valid trust for period of
21 years from date of testator's death, but at end of such time
lands passed as intestate property, provision being void for remote-
ness as to remaining period.

Before SEASE, J., Spartanburg, January, 1926.   Modified
and remanded.

Action by the Woodruff Oil & Fertilizer Company and
others against the estate of Daniel Yarborough and others
for the construction of decedent's will.   From a decree sus-
taining the will, plaintiffs and some of defendants appeal.

*Messrs. Lyles, Daniel & Drummond, Bomar & Osborne,*
and *Dial & Todd,* for appellants, cite: *Rule against per-
petuities:* 21 R. C. L., 282, 294, 306, 307; 30 Cyc., 1468,
1485; 94 Atl., 652; 98 N. E., 777; 2 McC. Eq., 323.
*Present will comes within rule and is void:* 107 S. C., 105;
39 Atl., 879; 116 S. C., 132; 53 So., 244.

*Mr. Stanyarne Wilson,* for respondent executors and
devisees of Daniel Yarborough, cites: *Where the income
payable to the devisee, it shows that a present gift is in-
tended and the estate vests in interest at death of testator:*
2 Jar. Wills, 461; 19 Wall, 167; 239 Ill., 394; 30 Ency.
(2nd ed.), 786.  *Rule as to perpetuities does not apply in
case at bar:* 192 Mass., 367; 4 Rich. Eq., 276; 1 Tiffany
Real Prop., 353-355; 1 Perry on Tr., 612, 618, 623, 619;
73 N. J. Eq., 427; Id., 159; 239 Ill., 389; Gray on Perpetui-
ties, Sec. 205; 21 R. C. L., 306, 309, 281, 291, 388.  *Cases*

*distinguished:* 39 Atl., 879; 64 Am. St., 621; 3 L. R. A. (N. S.), 668; 10 Id., 564; 30 Cyc., 1518. *"Contingent remainder":* 87 S. C., 55, 60, 61; 8 Rich. Eq., 267.

*Mr. F. P. McGowan,* for M. S. Bailey & Son, cites: *The term of fifty years to the executors is a sufficient estate to support a vested remainder at comon law and a fortiori under the Statute of wills and doctrine of uses:* 2 Kent Com., 264; 2 Blac. Com., 166; 23 R. C. L., 486. *Title vested in beneficiaries:* 2 Wash. R. P., 434, 458, 460; 31 S. C., 13; 116 S. C., 126; 1 Strob. Eq., 43; Hills Eq., 357; 107 S. C., 104; 87 S. C., 55; 66 S. C., 160; 107 S. C., 66; 12 Rich., 114. *Limitations are valid:* 21 R. C. L., 291; 23 R. C. L., 529, 536. *The rule against perpetuities does not require that future interests should become present estates of enjoyment within the limit:* 30 Cyc., 1482, 1485; 46 Atl., 1102. *Equitable interests are vested whenever legal estates are vested, and are not more subject to rule against perpetuities than legal estates:* 23 R. C. L., 529; 30 Cyc., 1481. *Will at bar contained no provisions which could be construed as an unlawful restraint upon the free alienation of property:* 131 S. C., 527; 4 Rich. Eq., 47; 113 S. C., 382; 16 S. C., 545; 87 S. C., 56.

February 22, 1928.

The opinion of the Court was delivered by Mr. Justice Blease.

The facts of this case are fully stated in the opinion of Mr. Justice Cothran.

I concur with so much of his opinion as holds that the limitation over of the corpus after the expiration of the term of 50 years from testator's death (designated as "the ulterior provision") is void for remoteness. I am not prepared, however, to concur with so much thereof as holds the trust term of 50 years (designated as "the primary provision") void *in toto* (though not itself offending against the

rule, must fall *merely because* the ulterior provision is void for remoteness). I shall briefly give my reasons for this view.

In cases of this kind, where the ulterior provision is void for remoteness, the primary provision may or may not be so related thereto that it must fall with the fall of the ulterior provision. If the two be so interwoven with, so interdependent upon, each other that they together constitute one scheme and cannot be separated, then if the ulterior provision be void the primary provision must also fall. But if they may be separated, if the existence of the ulterior provision is not necessary to the existence of the primary provision, if the primary provision subserves a purpose of its own, which it could and would serve if the ulterior provision had not been made, and not created merely to support the ulterior provision, then, if the ulterior provision be void, the primary provision is good and should be sustained unless it itself offends against the rule. Gray, Perpetuities (3d Ed.), §§ 247-250; Section 186, Tiff. Real Estate (2d Ed.), and authorities there cited.

That the ulterior provision herein offends against the rule, I entertain no doubt. It clearly violates the rule, and is, for that reason, wholly void. So much of the will, therefore, as relates to this provision passes out of the case. Eliminating this provision from the will, what have we left? We have precisely the situation that would have obtained had testator never inserted such provision in his will, but contented himself with the trust term only, as it was well within his right to have done. Had he done that, could it be successfully claimed that such provision should not be sustained? Would paragraph 5 of the will be sustained, had paragraph 6 not been incorporated therein by the testator? Is the limitation over of the corpus after the expiration of the trust term essential to the existence of the trust term itself? Does not the trust term within itself subserve a pur-

pose of its own, or is its only function to support the
ulterior provision? If its only function is to support the
ulterior provision and subserves no independent purpose of
its own, then it must fall with the fall of the ulterior provi-
sion. But if it subserves an independent purpose of its
own, it must be sustained unless it, too, offends against the
rule.

It is reasonable to suppose that testator had in mind
quite as much the disposition of the annual rents,
profits, etc., arising from the corpus during the term
of 50 years from his death as he did the disposition of the
corpus itself upon the expiration of that term. His purpose
was clearly twofold: First, the disposition of the annual
rents, profits, etc., during the trust term; and second, the
disposition of the corpus after the first objective should have
been accomplished. The provision for the first objective
was incorporated in paragraph 5, that of the second, in par-
agraph 6, of his will. I think it is clear that the two pro-
visions are clearly separable. True, the latter is supported
by, and cannot take effect until the expiration of, the former,
but that of itself does not make them inseparable. *The ex-
istence of the latter provision is not essential to the existence
of the former.* The former provision subserves a purpose
of its own, independent of its purpose of supporting the lat-
ter, to wit, regulating the payment out of the rents, profits,
etc., annually arising from the corpus, which had to be held
to constitute a productive source from which the annual pay-
ments could be made. This purpose the primary provision
could and would have performed had there been no limita-
tion over of the corpus itself after the expiration of the
trust term. Had the limitation over of the corpus not been
made, the legal title thereto would have passed by the Statute
of Distributions to the heirs at law of testator, upon his
death, burdened with the trust term. The fact that such
limitation was made but is void for remoteness gives pre-

cisely the same status that would have obtained had there been no limitation over of the corpus. It follows, therefore, that the primary provision should not be affected by the invalidity of the ulterior provision.

The decision in Johnston's Estate, 185 Pa., 179; 39 A., 879; 64 Am. St. Rep., 621, on the point that the limitation over after a term of 75 years was void for remoteness, was not new, but in accordance with the well-established law of the land. The decision therein, however, upon the point that the first limitation must fall because the second or ulterior provision was void was new and wholly unsupported by authority. The learned Judge who prepared the opinion admits that he had no authority therefor. Reliance was had, however, upon *Thorndike v. Loring,* 15 Gray (Mass.), 391, and upon three New York cases. In Section 249b, Gray, Perpetuities (3d Ed.), Professor Gray distinguishes these cases from Johnston's Estate as follows:

"The New York cases were all decided, not at common law, but under the peculiar provisions of the New York Statutes. The difference between *Thorndike v. Loring* and Johnston's Estate is this: In the former case the income was to be accumulated for 50 years in order that at the end of that time the accumulations might be given over, but the gift over was too remote, and could never take effect, therefore the object of the trust wholly failed; but in the latter case the object of the trust was not solely for the purpose of the remote gift over—in fact, it had nothing to do with the gift over—it was created solely to regulate the payment out of income during the 75 years. It would have effected its purpose had there been no gift over at all. There is a series of English cases opposed to Johnston's Estate, and on the whole, with great submission, the decision seems difficult to maintain." (It should be noted that the learned author is here considering the decision that the first limitation must fall *because* the second was too remote.)

In *Thorndike v. Loring,* and like cases, the object of the trust term was to accumulate a fund in order that at the end of such term the accumulations might be given over. Since this limitation over offended against the rule, the trust term, subserving no useful purpose of itself, but created merely to support the limitation over upon its expiration, was inseparable therefrom and fell with the fall of the void limitation.   But in Johnston's Estate, as in the case at bar, the purpose of the trust term was to regulate the payment out of the rents, income, etc., during its duration.   The limitation over after the accomplishment of this object therefore had nothing to do with it.   As above pointed out, had there been no limitation over at all of the corpus, it would not have interfered with this purpose of the trust term.   Had the primary provision provided for the accumulation of the rents, profits, etc., arising from the corpus during the duration of the trust term, and upon the expiration thereof the same had been limited over, then and in that event the primary provision would have been so interwoven with and so interdependent upon the ulterior provision that it would have fallen with the ulterior provision, as in *Thorndike v. Loring.* But since the primary provision in the case at bar, as well as in Johnston's Estate, was intended to subserve a purpose of its own, it is not dependent upon the ulterior provision, and need not fall merely because the latter offends against the rule.   In my opinion, therefore, the decision in Johnston's Estate, and the holding of Mr. Justice Cothran herein, upon the second point, to wit, that the first limitation, though not itself offending against the rule, must fall *because* the second limitation was void for remoteness, is fundamentally wrong.   The first or primary provision should be sustained unless it itself offends against the rule in whole or in part, and must not be condemned merely because the ulterior provision ran against the rocks of remoteness.

It is true that testator intended to dispose of his entire estate, and to die intestate as to no part thereof, but that of itself does not indicate that the two provisions are parts of a single plan or scheme, inseparable and wholy interdependent. The two provisions may be separated as easily and readily as if the first had been for life and the later by way of remainder. This Court has repeatedly held that a gift over, which is void, cannot defeat a vested interest, previously given. *Dougherty v. Dougherty,* 2 Strob. Eq., 63; *Finley v. Hunter,* 2 Strob. Eq., 208; *Young v. Dinkins,* Rich. Eq. Cas., 23.

The case of *Lyons v. Bradley,* 168 Ala., 505; 53 So., 244, reviews the authorities, and is, in my opinion, decisive of the question here presented. The decision therein in so far as the real estate was concerned, was governed by the peculiar Statute of that State, changing the common-law rule as to perpetuities. But the common-law rule of perpetuities was applied therein as to the personal property. The personal property was bequeathed in trust; the income to be distributed every 6 months to the persons then constituting a certain class; the trust to exist for 25 years, when the principal was to be distributed to a class then to be determined. The Court held that the gift of the principal was bad, but that the semi-annual gifts of the income were good for 21 years.

It was held in Johnston's Estate, that the primary provision does not offend against the rule. Is this true? Had testator directed that the income, profits, etc., arising from the corpus be annually paid over to his children for and during their lives and the life of the survivor, there could be no question but that they would have taken vested interests therein, as they were then in esse, and the gift would have in no sense offended against the rule. But he did not do that. He provided that said rents, etc., should be paid over annually and every year to his children,

share and share alike, and if one or more of said children should die without leaving a child or children, the share of such child should go to the survivior or survivors, and the child or children of a deceased child should take per stirpes the share the parent would take if living. It will be seen that it is wholly uncertain who the beneficiaries of any annual payment of such income, profits, etc., will be until the time of payment thereof, and for that reason it is likewise uncertain as to the size of the shares such beneficiaries, when determined, will take therein. The *right* of the several annual payments therefore cannot vest until the beneficiaries and the size of the shares are determined. The limitation as to the payment out of the rents, profits, etc., not being based upon any life or lives in being, but for an arbitrary period of 50 years, must be governed by the same rules invoked by Mr. Justice Cothran in determining whether or not the ulterior provision offended against the rule.

In note 3 to Section 249b, Gray, Perpetuities (3d Ed.), ·Professor Gray observes:

"Although the reason by Stewart, P. J. (in Johnston's Estate), for invalidating the trust term seems insufficient, yet were not the trusts of the term, in part at least, bad? On each 1st of May for 75 years the income was to be divided among the children then living, and the issue per stirpes then living of children then deceased; the persons taking and the size of the shares at each period of distribution, could not be determined until such period, which might be long after the limits fixed by the rule against perpetuities. On the question whether such trusts could be sustained in part, see Section 410 et seq., post."

Section 248 of Gray on Perpetuities (3d Ed.), is as follows:

"If the devise of a future interest is void for remoteness, but the prior devise is for life only or other limited period— for instance, if there be a devise to an unborn child for life,

remainder to the unborn child of such unborn child—the property after the termination of the prior interest goes to the person to whom property which has been invalidly devised or bequeathed goes. There is no difference in this respect between a devise or bequest void for remoteness and a devise or bequest void for any other reason."

If a limitation over after the expiration of a trust term be void, it matters not what the reason; whether for remoteness or for some other reason. To hold that a trust for a term of years, though in itself vested and not offending against the rule, must fail merely because a limitation over, upon its expiration, is void would be to lay down a doctrine at once dangerous and far reaching in its consequences; a doctrine that would nullify a valid trust merely because the instrument creating the trust contained a void provision for the disposition of the corpus after the expiration of the trust term. If the trust term be valid, it should be carried out regardless of the validity or invalidity of the ulterior disposition of the corpus.

For the reasons stated and upon the authorities cited, I am of opinion that the primary limitation should be sustained for a period of 21 years from the date of testator's death, for the reason that the annual payments falling due within that time do not offend against the rule; that the annual payments falling due more than 21 years from the date of testator's death do offend against the rule and are void; that during the term of 21 years from the date of testator's death, the rents, income, etc., should be paid to those who can bring themselves within the description of the designated beneficiaries at the time of each annual payment. The ulterior provision, and so much of the primary provision as exceeds 21 years from testator's death, being alike void for remoteness, and there being no residuary clause in the will, the lands passed upon the death of testator to his heirs

as intestate property, burdened with the trust term of 21 years from date of testator's death.

This opinion was originally prepared as a dissent to some of the holdings of Mr. Justice Cothran; since a majority of the Court has agreed in the views herein expressed, it becomes the opinion of the Court.

It is the judgment of the Court that the decree of the lower Court be modified in accordance with the views of this opinion, and that the case be remanded to that Court for further proceedings not inconsistent with the conclusions herein announced.

Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran (concurring and dissenting): Some of the plaintiffs in this action are judgment creditors of the estate of Daniel Yarborough, deceased; others, judgment creditors of one or more of the devisees under his will. Some of the defendants are judgment creditors of said estate; other claim to be mortgage creditors of the estate; and others, judgment or mortgage creditors of certain of the devisees.

The main purpose of the action, and the only question involved in this appeal, is the construction of the will of Daniel Yarborough. In its scope the action embraces a calling in of creditors, marshaling assets, an accounting by the executors, and the appointment of a receiver. All parties interested, judgment creditors, mortgage creditors, the executors, the devisees, and the heirs of Daniel Yarborough, appear to be properly before the Court as plaintiffs or defendants.

The controversy is between the judgment and mortgage creditors on the one side, and the devisees under the Yarborough will on the other. It is apparent that these creditors are, so far as the devisees are concerned, interested in having it determined that they take immediately as heirs at law and not as devisees; for if the future interests provided for

them in the will are held valid the creditors will be postponed indefinitely, or greatly embarrassed.

These future interests must therefore be discussed and determined.

It appears that Daniel Yarborough died in 1913, in Spartanburg County; he owned about 1,900 acres of land in that County and in Laurens County, which he made the subject of his will; he left surviving a widow and seven children, Calvin, John Hiram, Charles, Lafayette, L. E. and Lillie. The widow and Calvin are dead, the later leaving no children; John, L. E.; and Lillie are living, but are childless; Hiram, Charles, and Lafayette are living and have one, two, and four children, respectively, all minors. The five sons, John, Hiram, Charles, Lafayette, and L. E. Yarborough, were appointed executors of the will and duly qualified.

The fifth paragraph of the will is as follows:

"5. I will, devise and bequeath for the term of fifty years from my death to my executors all my lands, houses and real property, to cultivate, manage or lease same during said period, and pay over to all of my said children annually and every year the net income, issues, rents and profits of said lands, share and share alike, and if any one or more of my said children should die without leaving a child or children, the share of such one shall go to the survivor or survivors, and the child or children of a deceased child shall take per stirpes the share the parent would take if living. My said executors shall keep the said estate in reasonable repair and condition and pay the taxes and expenses of such repairs out of the gross income of my said estate for the purpose of properly caring for and managing and controlling said real estate. I hereby give unto my said executors two thousand dollars in money, which shall be kept as a fund for the proper management and control of my estate, and the income and profit or interest of the same shall be equally divided annually amongst all my children, share and share alike."

And the sixth is:

"6. At the end of fifty years from my death, I will, devise, and direct that all my lands be equally divided amongst all my children equally, the child or children of such as may be dead to take the share the parent would be entitled to if living, and if any of my children should die without children then the share or shares of such ones so dying shall go to and be equally divided amongst my then surviving children, and the child or children of such as may be dead, per stirpes, share and share alike—and upon such division, rents, income, money or interest in connection with said real estate shall be divided as the said land is hereby willed, given and directed to be divided. In case my executors should need funds for the payment of debts, as for carrying out my will in other respects, I hereby empower my executors to mortgage two tracts of land lying east of the public road leading from Cross Anchor to Musgrove Mills and the tract known as the London Waters place, also.

"The names of my children and legatees and devisees are as follows: Calvin, John, Hiram, Charlie, Lafayette and L. E. Yarborough, and my daughter, Lillie Yarborough."

The contentions of the creditors may be thus stated:

(1) That paragraph 5 of the will (which will hereinafter be referred to as "the primary provision") offends the rule against perpetuities in that it is uncertain who are to participate and the extent of such participation, in the annual distribution of the income from the estate committed to the executors.

(2) That paragraph 6 of the will (which will hereinafter be referred to as "the ulterior provision"), attempting to postpone the division, distribution, and vesting of title to the lands until the expiration of 50 years from the date of the death of the testator, is null and void, as offending the rule against perpetuities, in that it attempts to suspend the power of alienation and the vesting of title in the devisees

for an arbitrary period of 50 years, without any attempt to base the suspension upon a life or lives in being and 21 years thereafter. That by said attempted restriction upon alienation, the testator sought to give to his children the use, benefit and enjoyment of the property and place the same, or any interest in the same, beyond the reach of their credi-tors, and to deprive the children of the power to alienate or encumber it during that period. That, by reason of the invalidity of said attempted restriction and limitation title in fee simple vested in the named children of Daniel Yarbo-rough, as his heirs at law.

(3) That even should the primary provision be deemed a valid one, not opposed to the rule against perpetuities, it appears that the two provisions are so interdependent that the failure of the ulterior provision, upon the ground of remoteness, so disturbs the main and dominant purpose of the testator as to defeat it, and combined, the two provi-sions constitute a scheme which was manifestly adopted as a means for the accomplishment of that which the law for-bids; that the primary provision must therefore fall with the fall of the ulterior.

The devisees contend that neither clause of the will offends the rule against perpetuities, nor do they constitute an un-lawful restraint upon the free alienation of the property; and that the will should be executed according to its terms.

The case was referred to the master, who submitted to the Court the construction of the will, all other questions being reserved for future determination. The matter at issue then came on to be heard by his Honor Judge Sease, who filed an order or decree dated January 19, 1926, in which he sustained the contention of the devisees, and from it the creditors have appealed.

I. The first question for determination is the proper con-struction of the "primary provision"; whether or not it offends the rule against perpetuities. It devises and be-

queaths to the executors, for the term of 50 years, all of the testator's real estate, and directs that it be managed by them, paying the income annually to his children above named, share and share alike; providing that upon the death of any one of them, childless, his share should go to the survivor or survivors, and that the child or children of a deceased child should take per stirpes what the parent if living would have received.

It is important to determine whether the children of the testator under this clause took a vested or a contingent interest, for the application of the rule against perpetuities depends primarily upon the question whether the estate claimed by the devisees is a contingent or a vested estate. The rule is not concerned with the postponement of the *enjoyment* of an interest, but with the postponement of the *vesting* of such interest. If the will creates an immediate vested interest, the fact that its enjoyment is postponed is decisive against the application of the rule; if a contingent interest, the rules applies.

"This rule operates to prevent the undue postponement of the vesting of future interests." 21 R. C. L., 281.

"The rule against perpetuities is usually stated as prohibiting the creation of future interests of estates, which by possibility may not become vested within a life or lives in being and 21 years, together with the period of gestation when the inclusion of the latter is necessary to cover cases of posthumous birth." 21 R. C. L., 282.

"The rule against perpetuities is not concerned with the postponement of the enjoyment of an interest in property, but is directed to prevent undue delay in the vesting of future interests and estates." 21 R. C. L., 285.

"It is fundamental that the rule applies only to future contingent interests, and that it has no application to vested estates. * * * Hence the rule does not affect vested remainders or reversions, but contingent remainders in legal

estates are subjected to the rule, and the event on the happen-
ing of which the remainder is to vest must be one that is
certain to happen within the prescribed period, or the limita-
tion will be bad." 21 R. C. L., 926.

I agree with Mr. Justice Blease in holding:

"Had the testator directed that the income, profits, etc.,
arising from the corpus be annually paid over to his children
for and during their lives and the life of the survivor, there
could be no question but that they would have taken vested
interests therein, as they were then in esse, and the gift would
have in no sense offended against the rule. But he did not
do that. He provided that said rents, etc., should be paid
over annually and every year to his children, share and share
alike, and if one or more of said children should die without
leaving a child or children, the share of such child should
go to the survivor or survivors, and the child or children
of a deceased child should take per stirpes the share the
parent would take if living. It will be seen that it is wholly
uncertain who the beneficiaries of any annual payment of
such income, profits, etc., will be until the time of payment
thereof, and for that reason it is likewise uncertain as to
the size of the shares such beneficiaries, when determined,
will take therein. The *right* to the several annual payments
therefore cannot vest until the beneficiaries and the size of
the shares are determined. The limitation as to the payment
out of the rents, profits, etc., not being based upon any life
or lives in being, but for an arbitrary period of 50 years,
must be governed by the same rules invoked by Mr. Justice
Cothran in determining whether or not the ulterior provision
offended against the rule."

See, also, Gray on Perpetuities (3d Ed.), § 249b, note 3,
where it is said, referring to the case of Johnston's Estate,
185 Pa., 179; 39 A., 879; 64 Am. St. Rep., 621:

"On each 1st of May for 75 years the income was to be
divided among the children then living, and the issue per

stirpes then living of children then deceased; the persons taking and the size of the shares at each period of distribution could not be determined until such period, which might be long after the limits fixed by the rule against perpetuities."

The interests were therefore contingent and not vested, and the provision therefore in violation of the rule against perpetuities.

At Section 410 of Gray, it is said:

"But suppose there is a direction that the annual income shall be paid over annually to those who on a certain day in each year answer a particular description; e. g., to those who shall then be the heirs of the testator.   What then? *Such trust is clearly bad as a whole.*"

But it is contended that although the provision is void *as a whole,* it may be sustained to the extent of 21 years, the period for which the testator *might have* made provision.

This is impossible unless the Court would be justified in making a will for the testator.   He certainly did not intend that the trust should continue for that period and then terminate; he distinctly provided that it should continue for 50 years.   This Court has no authority for lopping off the period of 29 years, the extent of the invalidity of the provision, and assume that it is good for a period not in the contemplation of the testator.

The established rule, as the authorities hereinafter cited hold, is that in the case of primary and ulterior provisions the primary provision with fall with the fall of the ulterior provision, unless they are separate and independent of each other.   Certainly this rule cannot aid a provision, single in its character, that is void as it stands, by striking out the invalid portion and validating the remainder.   It is impossible to say that a trust for 21 years is not directly and immediately connected with one for 50 years; the one is included in the other, and therefore cannot be separate and distinct.

In effect, it is saying of the testator, in the judicial effort to construe and carry out his intention:

"He tried to provide for the distribution of the income annually for 50 years, and at the end of that period for the distribution of the entire estate; he could, under the law, do neither; but we will create an intention *for him,* to provide for the distribution of the income for *21 years,*"
destroying the remaining 29 years of distribution of income, and the provision for the distribution of the entire estate at the end of that period.

The testator applied to his lawyer:

"I want you to draw my will tying up my entire estate for 50 years before it may be distributed; in the meantime, the income shall be distributed as the will in the case at bar provides."

The lawyer replies:

"The law will not stand for a will like that; it will allow you to tie up your estate for only 21 years before it may be distributed; in the meantime the income to be distributed as the will in the case at bar provides."

Is there any assurance that the testator would say, "Well, draw the will up that way?" Is it not probable that he would say, "If I can't have my will drawn as I want it, I will have no will at all?"

It is easily conceivable that some of the testator's children will be alive when the 21-year period shall have elapsed. Under the construction *of the will* sustained by the opinion of Mr. Justice Blease, the estate will then be intestate property, and these children, alive at that time, for whom no provision other than an interest in the income is made by the will, will receive, in fee, their distributive share of the estate —a result inconceivable as the intention of the testator.

In a note to 3 L. R. A. (N. S.), 639, it is said:

"The general rule above outlined is subject, however, to two exceptions, both growing out of the cardinal principle

governing the interpretation of wills—that no effect shall be given thereto which will run contrary to the testator's expressed intention; one of which is that, if striking out a part of the provisions and leaving the rest will work an unjust distribution of the estate, the whole must fail. Thus, it has been held that, where the effect of establishing portions of the provisions would be to work injustice by giving a portion of testator's family a larger share of the estate than was intended, they will be declared void" (citing *Clemens v. Clemens,* 60 Barb. [N. Y.], 366).

In *Richards v. Moore,* 5 Redf. Sur., 278, it was held that where the income of personal property was given to the widow for life, and then after her death to testator's three children for life, and after their deaths the principal of the property was to be divided between his grandchildren, the bequest to the widow was held to fall with the bequest of the remainder, since to give her the income for life and divide the whole so as to give her a share of the personalty absolutely was contrary to the apparent intent of the testator.

See, also, *Benedict v. Webb,* 98 N. Y., 460; note 3 L. R. A. (N. S.), 641.

In the case of *In re Christie,* 133 N. Y., 473; 31 N. E., 515, the Court said:

"The learned counsel for the appellants, while frankly admitting the difficulty, seeks to avoid it by insisting that the unlawful restriction may be cut off and disregarded, and the power in trust be allowed to stand free from the prohibition declared. It is quite true that cases occur in which that sort of *judicial remedy* is applied in order to save valid trusts from the peril of some unlawful incident or limitation, but the doctrine is only applicable where the vicious provision is clearly separable from the valid devise or trust, and may be disregarded without maiming the general frame of the will, or the testator's substantial and dominant purpose."

But the invalid portion of the trust cannot be stricken off unless it is clearly separable from the valid portions and can. be "disregarded without maiming the general frame of the will of the testator's substantial and dominant purpose." *Re Christie,* 133 N. Y., 473; 31 N. E., 515.

In *Southampton v. Hertford,* 2 Vesey & B., 54, it was held that, where it is sought to sever surplus rents and profits from the legal ownership of an estate for a time which will extend beyond the period allowed for executory devises or trusts of accumulation, and to give them to a person who may not come into existence until after that period, the trust sought to be established is too remote, *and, being void in its creation, is incapable of modification so as to establish it to the extent to which it might have been originally carried.* See notes to 5 Ann. Cas., 432.

In *Leake v. Robinson,* 2 Meriv., 390, it was said:

"To induce the Court to hold the bequests in this will to be partially good, the case has been argued as if they had been made to some individuals who are and to some who are not capable of taking. But the bequests in question are not made to individuals, but to classes; and what I have to determine is whether the class can take. *I must make a new will for the testator, if I split into portions his general bequest to the class,* and say that because the rule of law forbids his intention from operating in favor of the whole class, I will make his bequests what he never intended them to be, viz., a series of particular legacies to particular individuals, or, what he has as little in his contemplation, distinct bequests in each instance to two different classes, namely, to grandchildren living at his death and to grandchildren born after his death."

The case of *Lyons v. Bradley,* 168 Ala., 505; 53 So., 244, so strongly relied upon to sustain the proposition that the primary provision, admittedly void as a whole, may be upheld to the extent to which the testator *might* legally have

made provision, denies rather than sustains this proposition, at least in one phase of the case. In that case there were four provisions of the will under review: (1) A primary provision creating a trust in certain *real estate* for a period of 25 years, the income from which was to be paid annually to certain distributees. (2) An ulterior provision for the distribution of the *real estate* at the expiration of the 25-year period. (3) A primary provision creating a trust in certain *stocks and bonds*, for a period of 25 years, the income from which was to be paid to certain distributors. (4) An ulterior provision for the distribution of the *stocks and bonds* at the expiration of the 25-year period.

The Court held that *both the primary and the ulterior provisions* of the trust in the *real estate* were void, as offending the rule against perpetuities; but that, while the ulterior provision of the trust in the *stocks and bonds* was void, the primary provision should be sustained for a period of 21 years. The conclusion of the Court in reference to the *real estate* trust fits the case at bar, for the trust here is of the entire estate. Why the Court decided differently in the application of the law to the trust in the *real estate* and the trust in the *personal property* is difficult to fathom.

"An executory devise directing limitations beyond the period allowed by law is void for the whole and not merely for the excess beyond the legal period." *St. Amour v. Rivard*, 2 Mich., 294.

II. The next question is whether the ulterior provision offends the rule against perpetuities. The will directs that at the end of 50 years from the death of the testator, all of the real estate shall be equally divided among his children (named), with executory devises over in the event that any should die childless or leaving children, prior to the expiration of the 50-year term.

Under the authorities above cited the applicability of the rule against perpetuities depends upon the character of the

estate, vested or contingent, which the named children of the testator took under the sixth clause of the will. It will be observed that there is no direct gift under this clause to the children; only a direction for the division of the land.

In Kales Estates (2d Ed.), § 500, it is said that, where the only gift is to be found in the direction to pay or divide at a future time, the "context justifies the *prima facie* inference that the legacy is contingent upon the legatee surviving the date of payment. It has been applied where the time of distribution is sure to arrive and is unconnected with the legatee, such as the expiration of a given number of years."

"In the case of a gift to a person in trust for another, if there are specific and effectual directions that the trust shall continue for a specified time and that the trust res of principal shall not be turned over to the beneficiary or beneficiaries until a certain time named, the *cestui que* trust cannot be considered as having a vested interest therein until the arrival of the time named; and consequently it would seem, if the time named is more remote than the period allowed by the rule, the gift would be void." 1 Tiff. R. P. (1st Ed.), 355.

"Where there is no gift but in a direction to pay or transfer or divide among several persons at a future period, though the future period is annexed to the payments, possession or enjoyment, yet it is also annexed to the devise or bequest itself. For in this case the direction to pay or transfer or divide constitutes the devise or bequest itself; *and therefore the vesting in interest is postponed and not merely the vesting in possession or enjoyment.*" Smith, Executory Interests, § 314.

"The first question that arises is, when the children were, by the terms of the will, to take the shares allotted in slaves by name? The language of the will bearing on the answer to this question is 'on the division and partition of the same,'

(meaning the residue of the estate, real and personal, after the specific devise to James R). 'I allow the negroes to be laid off, allotted and vested as follows.' Then follows the specific allotment of the negroes as already stated. It is clear that this provision is to take effect upon the partition of the estate, and that in the meantime the slaves are to remain part of the testatrix's undivided estate." *Jones v. Massey,* 9 S. C., 376.

A testator directed that his negroes should be hired out by his executors for 5 years, "and at the expiration of 5 years * * * that my executors divide said negroes * * * equally among all my children, and in case any of my children" should die before said time "leaving lawful children, said * * * children, shall take the shares of their parents." Held that this was a bequest to a class answering a certain description at the end of 5 years and no interest vested until that time. *Fulkerson v. Bullard,* 3 Sneed (35 Tenn.), 260.

"As a general rule, where there are no words importing a gift other than a direction to the executors or trustees to divide or pay at a future time, the legacy is contingent and does not vest until that time arrives." 30 A. & E. Enc. L., 771.

"Where a gift in a will is implied from the direction to divide or pay at a future time, it necessarily is inseparable from that direction, and must partake of its quality, and, one being contingent, the other must be; the conditional element being incorporated into the description of or into the gift to the remainderman." *Lingo v. Smith,* 174 Iowa, 461; 156 N. W., 402.

"The general rule for determining whether a bequest is vested or contingent is that when the time of division is of the substance of the gift the legacy is contingent, but when the time is mentioned only as a qualifying clause of payment or division the legacy is vested." *Crawford v. Engram,* 153 Ala., 420; 45 So., 584.

"Where there is no gift but by direction to executors or trustees to pay or divide the subject of the gift at a future time, the vesting is postponed until that time arrives." *Wessborg v. Merrill,* 195 Mich., 556; 162 N. W., 102, L. R. A., 1918-E, 1074.

"Where there is no gift, but a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting will not take place until that time arrives." *Palms v. Palms,* 68 Mich., 355; 36 N. W., 419.

In *Taveau v. Ball,* 1 McCord, Eq., 8, it was held:

"Where the time of the division is not connected with the substance of the gift, the vesting is not postponed to the period for division."

In *Bryson v. Nichols,* 2 Hill Eq., 113, the bequest was of a slave for life; at the death of the life tenant the slave was directed to be sold and the proceeds divided among the testator's five eldest children. The question arose whether the remaindermen took a vested interest in the slave. The Court, citing *Taveau v. Ball,* said:

" 'If the time of division be not the substance of the gift, it is only matter of regulation.' That applies to cases where there has been a gift to several, and a future time appointed for division—then, if the time of division be not the substance of the gift, it only operates to regulate the division to be made. But in this case, the rights of the elder children are not to the thing itself, but that the proceeds of the slave, when sold, should be divided among them. The division is hence of the substance of the gift; and they can take no interest, until by law, or rather by the will, that division is to be made."

"Where there are no words of direct and immediate gift, but simply a direction that the trustees shall convey at a future time on a certain contingency, futurity is annexed to the substance of the gift, and survivorship at the time of distribution is an essential condition to the acquisition of the

interest of the subject-matter. * * * Besides, the general rule is that where the devisees compose a class and there are no words of devise, except a simple direction to divide the property at a specified time, the gift will not vest until the time of division." *Lemmon v. McElroy,* 113 S. C., 532; 101 S. E., 852.

In *McGregor v. Toomer,* 2 Strob. Eq., 51, the Court said: "The general rule which has been drawn from the host of cases of this kind, with which the books abound, is that if futurity be annexed to the substance of the gift, the vesting is suspended, but if it appears to relate to the time of payment only, the legacy vests instantly. * * * When the testator has any ulterior object in deferring the vesting of the legacy to the time appointed for the legatee to take possession, then there would be some ground to consider it contingent."

See, also, *Wessborg v. Merrill,* 195 Mich., 556; 162 N. W., 102, L. R. A., 1918-E, 1074; *Quinlan v. Wickman,* 233 Ill., 39; 84 N. E., 38; 17 L. R. A. (N. S.), 216; *McComb v. Morford,* 283 Ill., 584; 119 N. E., 601.

We think that it is clear from the terms of the will, taking the fifth and sixth clauses together, that the testator intended that the children should not take a vested interest in the property until the division at the end of 50 years. Their interest being contingent and not vested, the rule against perpetuities applies and avoids the ulterior provision.

Another consideration which induces the application of the rule to the ulterior provision is the confusion which would arise upon the death of one of the children before the expiration of the 50-year period, and the consequent impossibility of carrying out the provisions of the will. The youngest of the children must have been at least 21 years of age at the death of the testator, for all of them qualified as executors. It is possible, but improbable, that all of them will be alive in 1963, the end of the period. If even one of them should die in the meantime, leaving children, these

children could take only as executory devisees; their interests are clearly contingent and void under the rule. If the children of the testator alive at that time could take as vested remaindermen and the children of a deceased child could not take by reason of the rule, the ulterior provisions as a whole could not be carried out.

"But a limitation by way of executory devise, which may possibly not take effect within the term * * * [fixed by the rule] is void as being too remote and tending to create a perpetuity, and care is in this manner taken that the property should not be tied up beyond a reasonable time." 21 R. C. L., 299.

In *Brattle Square Church v. Grant,* 3 Gray (Mass.), 142; 63 Am. Dec., 725, the Court said:

"It is otherwise with gifts or grants of estates in fee with limitations over upon a condition or event of an uncertain or indeterminate nature. The limitation over being executory, and depending on a condition, or an event which may never happen, passes no vested interest or estate. It is impossible to ascertain in whom the ultimate right to the estate may vest, or whether it will ever vest at all, and therefore no conveyance or mode of alienation can pass an absolute title, because it is wholly uncertain in whom the estate will vest on the happening of the event or breach of the condition upon which the ulterior gift is to take effect."

The Court, continuing, said:

"* * * All limitations by way of executory devise which may not take effect within the term of a life or lives in being at the death of the testator and 21 years afterwards, as a term in gross, * * * are void, as too remote, and tending to create perpetuities. * * * In the application of this rule, in order to test the legality of a limitation, it is not sufficient that it be capable of taking effect within the prescribed period; it must be so framed as *ex necessitate* to take effect, if at all, within that time. If, therefore, a limitation

is made to depend upon an event which may happen immediately after the death of the testator, but which may not occur until after the lapse of the prescribed period, the limitation is void. The object of the rule is to prevent any limitation which may restrain the alienation of property beyond the precise period within which it must by law take effect. If the event upon which the limitation over is to take effect may, by possibility, not occur within the allowed period, the executory devise is too remote, and cannot take effect."

It is a fixed rule that where the time for the vesting of a future interest is not measured by a life or lives in being, the period of vesting is limited to 21 years from the time the will takes effect, until the death of the testator.

"In case the time named for the vesting of the future interest is not measured by lives, but by a definite number of years, it is essential that the number of years be less than 21, in order that the limitation be valid." 3 Thomps. R. P., 725.

"Whenever lives in being do not form any part of the time of postponement, the only period under the rule against perpetuities is 21 years absolute." *Andrews v. Lincoln,* 95 Me., 541; 50 A., 898; 56 L. R. A., 103; *Kimball v. Crocker,* 53 Me., 263.

"Apart from a resort to lives in being as the standard for measuring the period of time for the postponement of the vesting of a future estate, the only definite period permitted by the rule against perpetuities is a term not exceeding 21 years." 21 R. C. L., 293.

III. But assuming the correctness of the contention, in the absence of other considerations, that the primary provision may be validated for the term of 21 years after the testator's death, the question remains whether it can stand in view of the conclusion that the ulterior provisions falls as offending the rule.

The conclusion which the authorities appear to sustain upon this question, is that if the two provisions are so interdependent that the failure of the ulterior provision, upon the ground of remoteness, *so disturbs the main and dominant purpose of the testator as to defeat it,* and combined, the two provisions constitute a scheme which manifestly adopted as a means for the accomplishment of that which the law forbids, the primary provision though valid standing alone, must fall with the fall of the ulterior provision.

It does not admit of question that the two provisions were intended to carry out the *main and dominant purpose* of holding the estate together for a period of 50 years and then dividing it; a species, as Mr. Minor calls it, of "posthumous avarice." In the meantime some provision appeared necessary for the disposition of the income; a necessity which arose directly from the creation of the ulterior provision and intimately blended with it. It is inconceivable that the primary provision would have been created if the testator had conceived that the ulterior provision would be void and have omitted it from the will.

The intention of the testator is very clear, to dispose *by will* of his *entire* estate; not to dispose of a part of it by will and leave the remainder as intestate property, which would be the result of holding that the primary provision was good even for a limited period, as indicated in the opinion of Mr. Justice Blease. It seems inevitable that to give the prmiary provision any effect at all is to disturb the main and dominant purposes of the will, its general scheme.

"Where a will contains different provisions, some of which are valid by law and others invalid, those which are valid will be upheld if they can be separated from those which are invalid *without violating the testator's general intention,* and as to the parts which are invalid the testator will be held to have died intestate. Where however the parts which are valid and those which are invalid, are so dependent upon each other, that they cannot be separated *without defeating*

*the testator's general intention,* the whole will or provision will be held invalid." 40 Cyc., 1418.

"The rule as applied in all reported cases, recognizes this limitation, that when some of the trusts in a will are legal, and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated, if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries or some of them, then all the trusts must be construed together, and all must be held illegal, and must fall." *Tilden v. Green,* 130 N. Y., 29; 28 N. E., 880; 14 L. R. A., 33; 27 Am. St. Rep., 487.

A very interesting case, and an able opinion, is found in *Anderson v. Menefee* (Tex. Civ. App.), 174 S. W., 904, which in its main features is strikingly parallel with the case at bar. It is there held, quoting syllabus:

"Where a will manifested two plans, a disposition of property to provide for the widow and son of testator, and a disposition, void as creating a perpetuity, to provide for the daughters of testator and their heirs, *there being nothing in the will or in the evidence indicating that the testator would have written his will to provide only for his wife and son,* the whole must fall on account of the invalidity of the provisions relating to the daughters under the rule against perpetuities, since where parts of a will are void the whole will be set aside if to sustain the other parts would work an injustice or *violate the general scheme of testator."*

"Where the elimination of a void provision in a will would render it unjust to sustain the balance of the will, and where the testator's general plan could not then be carried out, the whole will must be treated as ineffectual." *Epstein v. Werbelovsky,* 108 Misc. Rep., 214; 177 N. Y. S., 554.

"Where a will contains both valid and invalid provisions, the valid provisions will be given effect unless the provisions are parts of a single plan or scheme, or are so dependent on

one another that by avoiding the invalid provisions and allowing the valid to stand there will result a disposition of the estate so different from what the testator contemplated, or so unreasonable that it must be presumed that the testator would not have made the valid provisions, if he had been aware of the invalidity of the others." *In re* Van Wyck's Estate, 185 Cal., 49; 196 P., 50.

"Where it appears that a part of testator's general scheme is to control the devolution of his estate for an unlawful period, no part of such scheme can be sustained, and such provision will be void *in toto,* even though the testator might have validly controlled the vesting of his estate in part, as indicating such provision." *McCreery v. Johnston,* 90 W. Va., 80; 110 S. E., 464.

"Though the valid parts of a will may be upheld and the invalid parts disregarded if the latter can be separated from the valid parts and still effect be given to the testamentary plan, the entire will must fall, where the valid and invalid parts of the will are so related to the general scheme of testator for distribution of his estate that they cannot be separated without doing violence to his testamentary plan." *Beatty v. Stanley,* 298 Ill., 444; 131 N. E., 687.

"Where a will contains separate provisions, some valid and others invalid, the valid ones will be upheld if they can be separated without interfering with the general testamentary scheme, but if there be but one entire scheme and the valid portions cannot be upheld without doing violence thereto, or where the parts of the scheme are so connected as to be interdependent to the extent that the testator's intention would be defeated if one portion was upheld and others rejected, or if manifest injustice would result, all provisions must be held illegal." *Aldendifer v. Wylie,* 306 Ill., 426; 138 N. E., 143.

"Where portions of a will are void as being in contravention of the rule against perpetuities, and those portions relate

to the same property and constitute a part of a general plan of disposition, the valid as well as the invalid portions will fall together." *Loud v. Trust Co.,* 298 Mo., 148; 249 S. W.; 629.

"When legal and illegal trust in will are so connected as to constitute entire scheme, so that testator's wishes would be defeated if one were retained and others rejected, or manifest injustice would result from such construction to beneficiaries or some of them, all must be construed together and held illegal." *Closset v. Burtchaell,* 112 Or., 585; 230 P., 554.

"Devise of entire estate in trust to pay one-half of income to son and all his children for their lives, and one-half to daughter and her child for life, which was invalid as to son as violating statute against perpetuities, held invalid as to daughter also, since to declare trust invalid as to son only would require distribution of one-half to both, and thereby violate testator's intention of equal division." *Maltman's Estate,* 195 Cal., 643; 234 P., 898.

A will creating a valid trust estate and which contains a provision disposing of the corpus in violation of the rule against perpetuities is illegal in its entirety. *Barrett v. Barrett,* 225 Ill., 332; 99 N. E., 625.

"Where a will shows a complete and connected plan for the disposition of the whole estate, its valid provisions must be rejected with the invalid, if the latter are of such a character as to destroy the testator's scheme, or if the enforcement of the valid provisions would result in injustice." *Burke v. Burke,* 259 Ill., 262; 102 N. E., 293.

"The principle that, though an ulterior limitation of an estate devised be void, the will may be sustained by dropping the limitation and leaving the rest of the will to stand, cannot be applied, where the provision cannot be separated without interfering with testator's manifest purpose as shown by the will." *Gully v. Neville* (Miss.), 55 So., 289.

In determining the scheme of disposition in the mind of a testator, the valid and invalid parts of the will must be considered, and if one eliminating the invalid parts the general purpose of the testator be so changed as will make the remaining parts amount to a new will the will must fail. *Sevier v. Woodson,* 205 Mo., 202; 104 S. W., 1; 120 Am. St. Rep., 728.

Where valid and invalid portions of a will are so interdependent as to constitute one scheme, so that the presumed wishes of the testator will be defeated if one portion is retained and the other portion rejected, the entire will fails. *DeWitt's Will,* 188 N. Y., 567; 80 N. E., 1108.

In the case of *McCreery v. Johnston,* 90 W. Va., 80; 110 S. E., 464, there was a primary provision, valid, followed by an ulterior provision void under the rule against perpetuities. The same question arose there as here, whether the primary provision could stand where the ulterior provision was declared void. The Court said:

"The manifest purpose and intent of the testator was to vest the estate in those of his own blood at the remote period at which all of his greatgrandchildren might be born. He uses the living children somewhat as a link in the chain by which he attempted to accomplish this purpose, and can it be said that, when the remote object of the testator's bounty cannot take the estate attempted to be devised or bequeathed, some link in the chain through which it was attempted to pass it may take it? We do not think so. The whole provision must stand or fall together" (citing a long list of authorities).

In *Shepperd v. Fisher,* 206 Mo., 208; 103 S. W., 989, it was held that:

"The testator did not intend to create and dispose of separate and independent estates regardless of a general plan of disposing of his entire estate, and hence the valid devises

must fall with those invalid for violating the rule against perpetuities."

In *Estate of Fair,* 132 Cal., 523; 60 P., 442; 64 P., 1000; 84 Am. St. Rep., 70, it was held that:

"If there are valid and invalid clauses in a will, the valid ones cannot stand if the invalid ones are so interwoven therewith that they cannot be eliminated without interfering with and changing the main scheme of the testator."

In *Estate of Kountz,* 213 Pa., 390; 62 A., 1103; 3 L. R. A. (N. S.), 639, it was held:

"The antecedent particular estate fails as well as the remainder which is void for remoteness, and the heirs at law are entitled to immediate possession, where the chief purpose of the testator is to tie up the estate and prevent its distribution until a period too remote under the rule against perpetuities."

"Bequests in a will, valid in themselves, must be rejected with the invalid ones, if the retention of them would defeat the testator's wishes as evidenced by the general scheme adopted, or if manifest injustice would result to the beneficiaries." *Eldred v. Meek,* 183 Ill., 26; 55 N. E., 536; 75 Am. St. Rep., 86.

In *Barrett v. Barrett,* 255 Ill., 332; 99 N. E., 625, it was held:

"A will which gives the residuary estate to trustees in a trust to pay the income to testator's widow for life, and then to pay the income to his children for life, and then to pay the income to the grandchildren for life, and then to turn over the body of the estate to the greatgrandchildren, presents one entire complete disposition of the estate, and the invalidity of the disposition of the corpus, because in violation of the rule against perpetuities, renders the entire will invalid."

"The operation of these principles is subject to the general rule that whenever valid and invalid gifts form part of the

general scheme, the effect of the rule against perpetuities will be to cause the valid part to fall with the invalid ones. In such cases the failure of contingent remainders which do not vest until a time is too remote, will cause the antecedent particular estate to fail and render the heirs at law of the testator entitled under the intestate laws to immediate possession." 21 R. C. L., 324.

*In re Lilley's Est.,* 272 Pa., 143; 116 A., 392; 28 A. L. R., 366, it was held that it does not follow that simply because ultimate interests are void, prior interests must also collapse, and a prior estate is neither enlarged nor diminished when a remainder expectant upon it is declared void for remoteness, but, where the limitation of the prior and ulterior estates are so intimate and inseparably intertwined that the failure of the limitations of the latter disturb the main and dominant purpose of the testator of which the prior limitations are a part, such prior and ulterior estates are void; so, too, where the prior estate is but a mere agency to accomplish the transgression of the rule against perpetuities.

In *Estate of Fair,* 132 Cal., 523; 60 P., 442; 64 P., 1000; 84 Am. St. Rep., 70, a testator devised the residue of his estate to trustees during the lives of testator's children, in trust to hold and manage the trust property, and to pay the income thereof monthly to his children, in certain portions, and on the death of his children and the survivor of them, to transfer and convey the trust property to certain named beneficiaries, which did not include testator's son. It was held where the trust to transfer and convey the trust property on the death of the surviving child was void because prohibited by statute, the whole trust must fail, since the trust to convey and the trust to manage the estate and pay over the income were inseparable parts of one entire scheme, and to hold one valid and the other invalid would lead to a result contrary to the purposes of the will.

"If the income of a sum of money be given by will to one for life, and there is a gift over of the same after the decease of the legatee, which is void for uncertainty, the absolute property in such bequest does not vest in the legatee, but becomes liable to distribution among the heirs at law, as intestate property." *Brown v. Kelsey,* 56 Mass. (2 Cush.), 243.

Under the principles thus announced it is clear that, if the whole of the primary provision were valid, it is shown to be so intimately connected with the ulterior provision as to have become a part of the scheme, the dominant purpose of the testator, and must fall with the ulterior provision. How much more manifest is it that, where the primary provision is void as a whole, and it is impossible to separate the good from the bad in that provision, it must also fall.

It is contended that the test is whether the primary provision can stand, regarding the ulterior provision as never having been made. That is not the test; but rather, would the testator, knowing that the ulterior provision would be declared void, still have made his will containing only the primary provision? A simple reading of the will will answer that question in the negative. It is clear that the only purpose the testator had, in connection with the trust he established or attempted to establish, was to make an invalid gift. His purpose was to control the disposition of his property beyond the period that the law allows, and this devise was the scheme adopted to accomplish it. It was a manifest attempt to accomplish an illegal object and for that reason the whole scheme, primary and ulterior provisions, should fail. The two estates are so inseparable, so related, that upholding the one (even in part) and avoiding the other would clearly defeat the main, if not the only, purpose of the testator in making the devise.

Judge Freeman in his note to 64 Am. St. Rep., at p. 643, declares the rule:

"While we think it true beyond question that a disposition of property involving a perpetuity or forbidden trust must wholly fail when its unlawful part is an essential part of the scheme of the testator, so that it cannot be assumed that he would have made the valid part of the disposition if he had known that the remainder of it could not be carried into effect, it is equally true that every scheme for the disposition of property, though containing some element of invalidity, may be given effect in so far as valid, if by doing so, the general intent of the testator can be realized."

In the present case it is proposed to declare valid a part of the primary provision—to create a testamentary intention on the part of the testator which the will demonstrates that he never entertained.

It is worthy of observation that the result insisted upon was never suggested before the master, before the Circuit Judge, or at the hearing in this Court.

So that, regarding the ulterior provision void and the primary provision, even if valid upon its face, avoided by the avoidance of the ulterior provision, the real estate of the testator should be declared intestate property, the title to which at the time of his death vested in the heirs at law.

The judgment of this Court should be that the judgment of the Circuit Court be reversed and that the case be remanded to that Court for further proceedings not inconsistent with the conclusions herein announced.