14996

HUTTO *ET AL.* v. RAY

(6 S. E. (2d), 747)

April, 1939.

*Mr. E. H. Henderson,* for appellant,

*Messrs. Callison & Smith,* for respondents,

January 9, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

Isaac Hutto died in the year 1857, leaving a will which contained the following devise: "My land is to belong to my beloved wife Velier during her lifetime and all other property and after her death is to be equally divided between my children and after their death to their children and the remaining part of my property at the death of my beloved wife Velier is to be equally divided between my children."

Velier Hutto, to whom a life estate was given under the will, died many years ago. Isaac W. Hutto, a son of the testator, died intestate during the year 1935, leaving surviving him the plaintiffs, who are his children and grandchildren. After the death of the testator, Isaac Hutto, his lands were divided among his children as directed by the will, and in this partition Isaac W. Hutto received the tract of land described in the complaint. Thereafter, on October 19, 1892, he undertook to convey the tract allotted to him to Henry J. Zorn, and by successive conveyances this land came into the possession of the defendant, J. M. Ray, who now claims title thereto in fee.

The plaintiffs, who, as stated, are the children and grandchildren of Isaac W. Hutto, contend that under the devise above quoted, Isaac W. Hutto, their ancestor, took only a life estate in the premises in question, and that therefore, his grantee, Henry J. Zorn, acquired the said tract only for the life of Isaac W. Hutto; that upon the death of the latter, in the year 1935, the life estate was terminated, and the interest of Henry J. Zorn, whcih by successive conveyances had vested in the defendant, J. M. Ray, was likewise terminated by the falling in of the life estate. The plaintiffs now claim to be the owners in fee of the tract allotted to Isaac W. Hutto under the will of Isaac Hutto.

The defendant contends that under the devise above quoted, Isaac W. Hutto received either an estate in fee simple or an estate in fee simple conditional.

The lower Court held that Isaac W. Hutto received a life estate in the tract of land described in the complaint,

and that the plaintiffs in this action took an estate in remainder in fee.

The will was evidently drawn by an unlettered person, but we think no difficulty will be encountered in arriving at the true intent of the testator. Unless the devise should be construed to contain technical words which must be given a technical signification, it is obvious that two life estates were created, the first was given to Veleir Hutto, the wife of the testator, and the second to the children of the testator, and after their death the remainder in fee to their children. Four children survived the testator, and to each of them was allotted one-fourth of his real estate. In this case, however, we are concerned only with the tract which was set off to his son, Isaac W. Hutto.

We know of no clearer definition of the rule in *Shelley's case* than that given by Chancellor Harper in *Williams v. Foster,* 3 Hill, 193, 194: "By the rule in *Shelley's case* * * * it was determined that if an estate of freehold be given to the ancestor, and a remainder be thereon limited to his heirs, or to the heirs of his body, such remainder is immediately executed in possession in the ancestor so taking the freehold, and he takes an estate in fee or intail, according to the terms of the limitation." *Smith v. Smith,* 24 S. C., 304; *Bannister v. Bull,* 16 S. C., 220.

Neither the word "heirs" nor the words "heirs of the body" are to be found in the will. The words used are, "my children and after their death *to their children*". The legal construction of the words which we have italicized accords with its popular signification, namely, as designating the immediate offspring; for in all the cases in which it has been extended to a wider range it was either used synonymously with a word of larger import, as "issue", or else the context required such interpretation. *First Carolinas Joint Stock Land Bank v. Ford,* 177 S. C., 40; 180 S. E., 562.

There is nothing in the above clause which requires us to construe "their children" as being equivalent to "heirs" or "issue", or "heirs of the body". On the contrary the will clearly indicates a particular class of persons, and not a line of indefinite descent. See *Reeder v. Spearman,* 6 Rich. Eq., 88; *McLure v. Young,* 3 Rich. Eq., 559, 574; *Bannister v. Bull, supra.*

Under the foregoing authorities, it is clear that a life estate was created in Isaac W. Hutto, with a remainder in fee to his children. The rule in the *Shelley's case* is not applicable when the limitation is to "children"—immediate offspring, a restricted class or number who take as purchasers, as distinguished from "heirs" or "heirs of the body", which latter terms without super-added qualifying words denote an indefinite line of descent, taking by inheritance. *Clark v. Neves,* 76 S. C., 484; 57 S. E., 614; 12 L. R. A. (N. S.), 298.

In order to bring the rule in *Shelley's case* into operation, the subsequent estate must be limited to the heirs of the first taker; that is to say, it must be given to "heirs" or to the "heirs of the body" as an entire class or denomination, and not merely to the individuals embraced within such class. *Duckett v. Butler,* 67 S. C., 130; 45 S. E., 137. As used in this will, the word "children" does not constitute the entire class, whether the class be heirs, heirs of the body, or issue, but constitutes merely certain individuals embraced within such class. Hence the rule has no application.

It not infrequently happens, as the decided cases will show, that the word "children" is sometimes used in the sense of "heirs'" or "heirs of the body", or "issue", in order to carry out the intention of the testator. It is likewise true that where the intention of the testator requires it, the words "heirs" and "heirs of the body" have been construed to mean "children". *DuBose v. Flemming,* 93 S. C., 182; 76 S. E., 277; *First Carolinas Joint Stock*

*Land Bank v. Ford, supra; Pearson v. Easterling,* 104 S. C., 178; 88 S. E., 376. But such construction always depends upons the circumstances of the particular case. We find nothing in the will under discussion requiring such construction.

By referring to the devise in the case at bar, it will be noted that after creating successive life estates in his widow and then in his children, with a remainder to their children, the testator concludes with this clause, "And the remaining part of my property at the death of my beloved wife Velier is to be equally divided between my chlidren."

In *Curton v. Little,* 119 S. C., 31; 111 S. E., 803, 804, it is said: "The following principles are well established in this state in the construction of wills: 'When a gift is made in one clause of a will in clear and unequivocal terms, the quantity or quality of the estate given should not be cut down or qualified by words of doubtful import found in a subsequent clause. To have that effect, the *subsequent words should be at least as clear in expressing that intention as the words in which the interest is given.'*" (Emphasis added.) *Lucas v. Shumpert et al.,* S. C., 6 S. E.; 2d. 17.

The super-added words to which we have referred are of doubtful import. It is not within reason to assume that the testator by this concluding clause refers to his lands which he had previously completely disposed of in detail. In our opinion, by the clause in question, the testator intended to dispose of such personal property as might remain after the death of his wife.

We are convinced that the testator, Isaac Hutto, intended that his son, Isaac W. Hutto, should take a life estate in the tract of land described in the complaint, and that his children should take an estate in remainder in fee.

It is true that Isaac W. Hutto, the life tenant, conveyed the land, and under successive conveyances it is now held by the defendant, J. M. Ray, but the

life tenant could convey no more than his life estate, and when he died in 1935 the life estate terminated, and what he had previously conveyed no longer existed.

Judgment affirmed.

MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.

MR. CHIEF JUSTICE STABLER did not participate in the decision of this case.