17767

Ola S. BLACK and Nancy Jean Black Lovick, Appellants, v. Tom S. GETTYS, Individually and as Executor and Trustee under the will of John A. Black; Anna Black, John A. Black, Jr., and Betty R. Black, minors over the age of fourteen years; and Anne Bandon Lovick and Nancy Jean Lovick, minors under the age of fourteen years, individually and as representatives of a class consisting of all born and unborn grandchildren and other descendants of John A. Black, Respondents.

(119 S. E. (2d) 660)

*Messrs. Boyd, Bruton & Lumpkin,* of Columbia, *H. Simmons Tate, Jr.,* of Columbia, *of Counsel,* and *Charles B. Ridley,* of Rock Hill, *for Appellants,*

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Respondent, Tom S. Gettys,*

April 14, 1961.

OXNER, Justice.

John A. Black, a resident of Rock Hill, South Carolina, died on August 6, 1958, survived by his widow, Ola S. Black, four children, Nancy Jean Black Lovick, Anna Black,

John A. Black, Jr., and Betty R. Black, and two grandchildren, Annie Bandon Lovick and Nancy Jean Lovick, all of whom are minors except the widow and Mrs. Lovick. He left a will dated March 5, 1958, to which he had added one codicil dated May 13 and another dated June 16, 1958. Tom S. Gettys, an attorney of Rock Hill, was named as executor and trustee.

On March 19, 1959, the widow and adult child brought this action seeking (1) to have Item 5 of the will declared invalid as violative of the rule against perpetuities; (2) to have Item 6 as amended by one of the codicils declared invalid on the same ground and on the further ground that in the trust therein created there was a failure to designate a beneficiary to take a portion of the income and principal in the event of certain contingencies; (3) an adjudication that the property described in Items 5 and 6 should be distributed to the widow under the residuary clause of the will; (4) the removal of the executor and trustee on the ground that he had exhibited such extreme hostility and prejudice against the widow that he could not fairly and impartially discharge his duties and that his attitude threatened to deprive her of substantial benefits under the will.

In addition to the trustee and executor, there were made parties defendant the three minor children and two grandchildren, the latter individually and as a class representing any grandchildren hereafter born. Guardians *ad litem* were duly appointed for the minor defendants. They filed answers submitting the rights of their wards to the protection of the Court. In the answer filed by the executor and trustee, he denied that the will was invalid in any respect and alleged that he had faithfully and properly discharged his duties. He further filed a cross-petition in which he asked that the widow be required to perform the terms of a certain "stock option contract" entered into between her and her husband on April 3, 1958. Plaintiffs filed a reply to this cross-petition in which they alleged that said contract was void and unenforceable for certain reasons hereinafter discussed.

The case was referred to James L. Moss, Jr., Esq., a prominent member of the York County Bar, as Special Master. After taking considerable testimony, he filed a report in which he concluded (1) that Items 5 and 6 of the will were valid; (2) that the executor and trustee had properly discharged his duties and should not be removed; and (3) that the widow should be required to comply with the stock option contract which she entered into with her husband. On appeal to the Circuit Court this report was confirmed. From this order the widow and adult child have appealed.

There has been no appeal from so much of the order as held that Item 5 was valid and that the executor and trustee should not be removed.

The questions presented for our determination are:

(1) Does the trust created by Item 6 as amended by one of the codicils offend the rule against perpetuities upon the ground that the interests therein created were contingent and those who were to take the remainder after the termination of the trust could not be determined within the period fixed by the rule?

(2) If so, can the trust created by said Item be allowed to stand for the period fixed by the rule?

(3) Is the trust created by this Item void for failure to designate a beneficiary to receive the income and principal in the event of certain contingencies?

(4) Should Mrs. Black, the widow, be required to perform the terms of the "stock option contract"?

The cardinal rule of construction is to ascertain and effectuate the intention of the testator, unless that intention contravenes some well settled rule of law or public policy. While there are certain rules of construction to be followed in seeking such intention, they are all subservient to the paramount consideration of determining what the testator meant by the terms used. *Peoples National Bank of Greenville v. Harrison,* 198 S. C. 457, 18 S. E.

(2d) 1; *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637.

Since in arriving at the intention of the testator every Item must be considered in relation to other portions of the will, *Rikard v. Miller,* 231 S. C. 98, 97 S. E. (2d) 257, it is necessary that the entire instrument be summarized.

Item 1 contains the usual direction for the payment of debts and funeral expenses. In Item 2 the sum of $1,000.00 is given to each of the grandchildren who may be living at the time of the testator's death or who may be born within six months thereafter. In Item 3 the testator's stamp collection is given to his son John A. Black, Jr., and the furniture, automobile and personal effects are given to his wife.

In Item 4 the testator devised certain property in Rock Hill to his wife "during her life or so long as she shall remain unmarried, and on her death or marriage, I give and devise said property to my children Nancy Jean Lovick, Anna, John and Betty, share and share alike (*per stirpes*), to be theirs absolutely."

In Item 5 he devised certain property in or near the town of Ebenezer to his trustee and directed him to sell same and distribute the net proceeds "to my wife, if unmarried, and to my children, share and share alike (*per stirpes*), absolutely."

Item 6 is as follows:

"I give, bequeath and devise to my Trustee, hereinafter named, all my farm lands, with improvements thereon, located in Chester County and York County, and all my farm machinery and equipment, and my shares of stock in the Rock Hill National Bank, to have and to hold the same upon the trusts following, namely: To pay the income thereof, after expenses and taxes, to my wife, for a period of ten (10) years after my death, or for so long during ten (10) years after my death as she shall remain unmarried, in quarterly, semi-annual or annual installments, as may be convenient to

my Trustee, and, thereafter, for a period of twenty (20) years, to pay the income thereof, after expenses and taxes, in convenient quarterly, semi-annual or annual payments, as follows: One-half (½) to my wife, Ola, for so long during said period as she shall remain unmarried, and one-half (½), or such part of said income not paid to my wife, to my children, Nancy Jean Lovick, Anna, John and Betty (*per stirpes*), share and share alike, and then at the expiration of thirty (30) years after my death, my Trustee shall deliver my trust estate to my aforesaid children (*per stirpes*), in such form as it may then exist, or in kind or money, share and share alike (*per stirpes*), in full ownership, and the trust thereon shall thereupon terminate."

In Item 7 he disclaims any interest in a certain parcel of land. In Item 8 the residuary estate is given to the testator's wife.

In Item 9, the last item of the will, Tom S. Gettys is appointed executor and trustee with full power to manage, control and dispose of the trust estate or any part thereof, subject, however, to the limitations in Items 5 and 6, after which there is the following proviso:

"Provided, that my Trustee in his uncontrolled discretion during the existence of the Trust is authorized to pay or deliver to my unmarried wife or my children, hereinbefore named, or to any other person for their account, such part of my Trust Estate as in my Trustee's opinion may be necessary in the interest of any of the beneficiaries in case of educational needs, serious illness, or other grave emergency."

In a codicil executed on May 13, 1958, the testator changed the figure "thirty" in Item 6 to "thirty-six" so as to make the trust terminate thirty-six years after his death instead of thirty years as originally provided. In this codicil he also designated a substitute executor and trustee in the event Tom S. Gettys was unable to serve. In a codicil executed on June 16, 1958, he made a bequest of $500.00 to a brother.

176

We shall first discuss the question relating to the rule ▇▇ against perpetuities. A classic formulation of the rule is that of Gray: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life being at the creation of the interest." Gray, Rule against Perpetuities, 4th Edition, Section 201. This statement of the rule was approved in *Love v. Love,* 208 S. C. 363, 38 S. E. (2d) 231, 236, 168 A. L. R. 311. As pointed out in the *Love case,* "if provisions of a testamentary character are such that, under them, a violation of the rule against perpetuities may possibly happen, then the devise of interest dependent upon such provisions is void."

The rule is not concerned with the postponement of ▇▇ the full enjoyment of a vested estate. It deals with remoteness of vesting and not with the duration of vested interests. *Woodruff Oil & Fertilizer Co. v. Estate of Yarborough,* 144 S. C. 18, 142 S. E. 50. It is applicable to equitable interests as well as to legal interests but if "the interests under a trust vest within the period of the rule against perpetuities, the fact that the trust may continue beyond the period does not invalidate it." Scott on Trusts, Volume 1, Section 62.10, page 391. It has been stated: "A strict and technical application of the rule against perpetuities does not involve any limitation on the permissible duration of a validly created trust, as long as the interests of the cestuis will necessarily vest, if ever, within the period prescribed by the rule, * * *." 70 C. J. S., Perpetuities, § 27, p. 609.

Although according to the common law a private trust with definite beneficiaries is not void merely because it may endure longer than lives in being and twenty-one years, there is a conflict of authority on the question of whether public policy requires that an indestructible private trust be limited in duration even though all interests are vested. There is also a diversity of opinion as to the manner of effectuating such policy. Bogert, Trusts and Trustees, Volume 1-A, Section 218; 70 C. J. S., Perpetuities, § 27; Annotation 110 A. L. R., page 1450; Scott on Trusts, Volume 1, Section

62.11; Restatement of the Law of Trusts, Second, Section 62, page 169; The Law of Future Interests, Second Edition, Simes and Smith, Section 1391. However, this interesting question need not now be decided and we intimate no opinion thereabout. No attack is made on the duration of this trust as violative of public policy. Here appellants have invoked only the common law rule against perpetuities. It is claimed that Item 6 offends the rule because the interests of the testator's children are not vested but contingent on their survival to the date of the termination of the trust. So that our sole inquiry on this phase of the case is whether the interests created under Item 6 of the will are vested or contingent.

In their brief, appellants advance three reasons for holding that the children did not acquire a vested interest under Item 6, namely:

"1. The gift in remainder is to a class whose membership is not determined until the time for distribution.

"2. A requirement of survival is implied from the direction to the trustee to deliver the trust estate to the remaindermen at a future time.

"3. The intention of the testator as expressed in the will was to benefit his descendants and not such persons as may be the heirs, next of kin, or legatees of his children."

At the outset it must be kept in mind that the law favors the vesting of estates at the earliest time possible and whenever there is doubt as to whether an interest is vested or contingent, the Court will construe it as vested. *Walker v. Alverson*, 87 S. C. 55, 68 S. E. 966, 30 L. R. A., N. S., 115; *Wannamaker v. South Carolina State Bank*, 176 S. C. 133, 179 S. E. 896; *Albergotti v. Summers*, 205 S. C. 179, 31 S. E. (2d) 129.

We do not think that the devise under Item 6 is to a class. It appears that the children were to take as individuals rather than as a group or entity. They are specifically named as beneficiaries of a portion of the

trust after the expiration of ten years, then the trust estate is to be delivered to the "aforesaid children", which we think is just as specific as if the children had again been named. In Simes and Smith, the Law of Future Interests, Second Edition, Section 612, it is stated: "If the beneficiaries are designated only by name, the constructional preference is that the gift was made to them as individuals. The fact that the named individuals may be so related that they could have been described by a class designation is usually regarded as insufficient to turn the gift into a class gift." The same view is expressed in an annotation in 75 A. L. R., page 783, as follows: "Considerable importance usually attaches to the manner in which the beneficiaries are designated. Thus, while the naming of them is not always decisive of the character of the gift, such a gift is *prima facie* to individuals, although the persons designated may constitute a natural class." Also, see annotation in 61 A. L. R. (2d) at page 258.

Appellants strenuously argue that the use of the phrase *"per stirpes"* creates an implied condition that the children must survive the termination of the trust. They say that this Item "creates a gift to a class composed of the testator's children and grandchildren" and, therefore, not until the expiration of the period of the trust can those who are to take be determined.

*"Per stirpes"* is thus defined in 2 Bouv. Law Dict., Rawles Third Revision, p. 2558: "By or according to stock or root; by right of representation." When descendants take by representation of their parent, they are said to take *per stirpes;* that is, children take among them the share their parent would have taken, if living. When this phrase is considered in connection with its use in other portions of the will, we do not think it implies a requrement of survival; rather, it was used in elaboration of the phrase "share and share alike" to indicate that the corpus of the trust·was to be divided among the named children in equal shares. The phrase "share and share alike" ordinarily indi-

cates a per capita distribution. In Item 4 after a devise of certain property to the testator's wife for life or during her widowhood, it is given to the children *nominatim* "share and share alike (*per stirpes*), to be theirs absolutely." No contention has been made that the interest given to the children under this Item was contingent. Certainly here it could not be said that there was an implied condition that a child, in order to take, should be living at the time of the death or remarriage of his mother. Likewise in Item 5 the trustee is directed to sell certain property and distribute the net proceeds to the testator's wife, if unmarried, and to his children "share and share alike (*per stirpes*), absolutely." Here also there was an outright gift to the children and the phrase *"per stirpes"* has no significance. The presumption is that the testator used the words *"per stirpes"* in the same sense in the other Items of the will. As stated in respondents' brief, these words "never appear except in parentheses, never relate to any party or parties except the testator's four named children, are always used in parentheses in connection with the words 'share and share alike', and explain or elaborate upon the phrase 'share and share alike' ".

In *Irvin v. Brown,* 160 S. C. 374, 158 S. E. 733, the testator gave his property to his wife for life and directed that at her death, it be divided and one-third thereof should go "to the then living heirs of my wife, *per* [*stirpes*]." It was held that those who were to take should be determined by the statute of distributions, which would include the wife's second husband. The Court said: "It is true that *'stirpes'* denotes roots or common stocks, and that the term *'per stirpes'* means literally 'by stocks or roots,' yet, as has been indicated, that term as employed in our law relates to the mode of distribution—not who shall take, but the manner in which those shall take who come within the class entitled to take."

*In re Fedder's Trust,* 187 Misc. 201, 61 N. Y. S. (2d) 335, 337, involved a trust in which a somewhat similar use was made of the phrase *"per stirpes"*. The settlor provided

that the trust should be administered for the benefit of his daughter and upon the death of the daughter, the trustee was directed to pay the corpus of the trust to her children in equal shares, but if the daughter left no children surviving, then the trustee should pay the entire balance of the trust in equal shares to the settlor's named three brothers and two sisters *"per stirpes* and not *per capita."* The daughter died childless and prior to her death one brother and one sister of the settlor died. The question for determination was whether the future estate created by the trust vested at the time of the death of the settlor or at the time of the death of his daughter, the life tenant. The Court held that the five brothers and sisters took vested estates and that the trust should be divided into five equal parts. In reaching this conclusion, the Court said: "The use of the phrase *per stirpes* and not *per capita* contained in the trust is meaningless. Following words of survivorship, they would have a definite meaning, but it is too far a cry and almost ridiculous to construe that phrase as containing words of survivorship or to say that the settlor who perhaps did not understand the meaning of the phrase, employed it to extend the trust to the issue of his brothers and sisters."

It is argued that this will was drawn by an attorney who must have known the technical meaning of the words *"per stirpes"* and used them to imply that to take, a child must survive the termination of the trust. But it may just as plausibly be said that if this was the meaning intended, he would have used express words of survivorship or inserted a substitutionary clause.

We conclude that the words *"per stirpes"* were not used in this Item to imply survivorship, nor does the phrase designate alternate takers. All of the cases relied upon by appellants involved gifts to a class. *In re Perlmutter's Will,* 156 Misc. 571, 282 N. Y. S. 282, 285, is cited by appellants as "exactly in point." That case involved a testamentary trust providing that at its termination the principal was to be divided, to the extent of 14%, among

named children of the testator in designated proportions and the balance equally divided "among my surviving children, *per stirpes* and not *per capita.*" The Court held that the last named provision was a gift to a class and that those who were to take would be determined at the time of distribution. Clearly this was a gift to a class, "the surviving children." The existing authority to the effect that the phrase *"per stirpes"* may sometimes enlarge a gift to "children" so that it will include "grandchildren" (*e.g.,* 3 Restatement, Property, Section 285, Subsection (2), Clause (d), pp. 1507-1508) is restricted to class gifts.

The word "children" is not ordinarily construed as including grandchildren. *Jones v. Holland,* 223 S. C. 500, 77 S. E. (2d) 202. Moreover, this gift is not to "children" as a class, but to named individuals. We find nothing to indicate that the testator intended to make a gift in Item 6 to grandchildren. It is apparent that he knew how to express his intention when his purpose was to provide for a grandchild as evidenced by Item 2. *Logan v. Brunson,* 56 S. C. 7, 33 S. E. 737.

The next ground advanced by appellants in support of their claim that the interest of the children was not vested involves the "divide and pay over rule". The general rule was stated in *Lemmon v. McElroy,* 113 S. C. 532, 101 S. E. 852, 854, as follows: "Where there are no words of direct and immediate gift, but simply a direction that the trustees shall convey at a future time on a certain contingency, futurity is annexed to the substance of the gift, and survivorship at the time of distribution is an essential condition to the acquisition of the interest or the subject matter. * * * Besides, the general rule is that where the devisees compose a class and there are no words of devise, except a simple direction to divide the property at a specified time, the gift will not vest until the time of division." Statements to the same effect will also be found in *Woodruff Oil & Fertilizer Co. v. Estate of Yarborough, supra,* 144 S. C. 18, 142 S. E. 50.

Both of the above cases involved class gifts. Many courts limit the application of the rule to gifts of this character. In a few jurisdictions, however, it has been applied to gifts to individuals. But where this is done the force of the rule is given much less effect. In fact, in some jurisdictions the rule has been repudiated. An excellent discussion of this subject will be found in Simes and Smith, The Law of Future Interests, Second Edition, Sections 576, 588, 593, 657 and 658. As pointed out in this authority, where the rule applied, the courts make certain exceptions, two of which appear in this will: (1) The purpose of postponing the division of the corpus of the trust was primarily to provide an income to the widow and not to let in additional members of a class. (2) The children after the expiration of ten years share in the distribution of the income and for their benefit, the trustee is authorized under certain circumstances to invade the corpus. Then, too, the direction to the trustee is not technically to divide and pay over but simply to "deliver" the corpus to the remaindermen. These circumstances fully rebut any inference under the divide and pay over rule that the beneficiaries must survive the termination of the trust.

In *McQueen v. Branch Banking & Trust Co.,* 234 N. C. 737, 68 S. E. (2d) 831, 835, it is stated:

"Where an active trust is created for the use and benefit of named beneficiaries, or there is a gift of all or a part of the income therefrom to the beneficiaries, pending final division, or there is other language in the will evidencing a clear intent that a beneficial interest in the estate shall vest in the parties named immediately upon the death of the testator, with directions to the trustees to divide and deliver the estate at a stated time in the future, the interest vests immediately upon the death of the testator and the date of the division merely postpones the complete enjoyment thereof."

To the same effect, see *In re Mikaloff's Estate,* 400 Pa. 140, 160 A. (2d) 703; *Forbringer v. Romano,* 10 N. J. Super. 175, 76 A. (2d) 825.

We conclude our discussion of the "divide and pay over" rule by emphasizing the fact that it is only a rule of construction. It does not itself create the requirement of survival, but at times is of value in the determination of whether such requirement was intended by the language of the gift.

What has been said disposes of the third ground upon which appellants' claim of a contingent interest is based.

We do not think the circumstances relied upon to show a contingent interest, whether considered singly or collectively, are sufficient to rebut the presumption of a vested interest. Among other cases supporting this conclusion are: *Boykin v. Boykin,* 21 S. C. 513; *Roberts v. Herron,* 78 S. C. 115, 58 S. E. 968; *West v. Smith,* 89 S. C. 540, 72 S. E. 395; *Meyer v. Matthews,* 117 S. C. 22, 108 S. E. 174; *Wannamaker v. South Carolina State Bank,* *supra,* 176 S. C. 133, 179 S. E. 896. *Albergotti v. Summers,* *supra,* 205 S. C. 179, 31 S. E. (2d) 129, is distinguishable for the will there disclosed various *indicia,* not present here, evincing an intention on the part of the testator to postpone the vesting of the remainder until the expiration of the period of the trust. The circumstances in that case clearly showed that the enjoyment of the remainder was not postponed merely for the convenience of the estate but for reasons personal to the devisees.

Having reached the conclusion that the children took a vested interest under Item 6, it follows that there was no violation of the rule against perpetuities. In view of this conclusion, it is unnecessary to determine whether if the rule were violated, the trust created should be allowed to stand for the period fixed by the rule.

The next question is whether the trust created by Item 6 is void for failure to designate a beneficiary to receive the income and principal in the event of certain contingencies.

If the description of the beneficiary of a trust is so indefinite as to make it impossible to determine who the beneficiary may be, the trust will fail because of this uncertainty. But here the beneficiaries are named. It is true that under some contingencies that have not occurred and may never occur, there may be presented difficult questions of construction as to the proper person to receive a portion of the income. But these legal problems which may later arise do not invalidate the trust provisions as to the payment of income. Moreover, the fact that a trust might not embrace all rights in the trust *res* is not a ground for declaring it void for indefiniteness. Apart from the foregoing considerations as to the income portions of the trust, there appears to be no question as to who is entitled to receive the trust principal. There will be no default of someone to enforce a performance of this trust.

Both the Referee and the Circuit Judge sought to determine the proper person to receive the income in the event of certain contingencies and counsel for both parties have given extended consideration to this question in their briefs. But we do not think that we should now undertake to pass on contingencies that may never arise. The following language of the court in *Forbringer v. Romano. supra*, 10 N. J. Super. 175, 76 A. (2d) 825, 830, is apposite : "Our courts normally decline to interpret and construe testamentary passages and declare the nebulous or fortuitous rights of contingent beneficiaries unless there is some present or imminent need for enlightenment."

The final question is whether Mrs. Black, the widow, should be required to perform the terms of an instrument styled "stock option contract." It was executed under seal by her and her husband on April 3, 1958, or about four months prior to his death. It recites that Mrs. Black is the owner of 53 shares of stock in a Rock Hill bank and that the parties were "in agreement that should John A. Black predecease his wife, Ola S. Black, then and in that event, the interests of the said Ola S. Black and the children of Ola

S. Black would best be served if Ola S. Black should place the aforesaid shares of stock in trust for the benefit of herself and her children." Mrs. Black then agreed, "in consideration of $5.00, love and affection, and other valuable consideration", that within four months after the death of her husband, should be predecease her, she would sell and transfer to Tom S. Gettys said bank stock at the price of $1.00 per share in trust to hold and manage said property and pay the net income thereform to her for life, and after her death to pay the net income in equal shares to their four children for a period of thirty years from the date of Mr. Black's death, at which time the trust would terminate and the corpus be delivered to the children. The trust was to also contain a proviso authorizing the trustee to invade the corpus to take care of any emergency needs of the beneficaries.

The foregoing instrument was prepared by Mr. Gettys, the same attorney who drew the will. It will be noted that the proposed trust is very similar to that set up in Item 6 of the will.

Mrs. Black attacked the validity of the foregoing instrument upon numerous grounds, none of which were sustained by the Referee. But on appeal from his report, the only question raised before the Circuit Judge was that the instrument was unenforceable because it was not supported by an actual consideration and this is the only question presented to us.

The Circuit Judge held that an instrument under seal imports a consideration and in the absence of fraud, lack of consideration could not be shown. He further stated: "By this sealed instrument, therefore, petitioner (Mrs. Black) acknowledged that it promotes her best interests and those of her children, and she acknowledged receipt of $5.00 and other valuable considerations, as well as love and affection."

The testimony taken by the Referee is not included in the transcript of record. The only reference to it is the following

contained in the agreed statement: "Over objections of attorney for respondent Gettys, Mrs. Black testified that she was not paid any money at that time or at any other time to induce her to sign that 'stock option contract', and that she did not receive any consideration for that agreement at that time. The Special Referee noted the objection, and admitted this evidence subject to it."

It has been held that while "one who signs an instrument of writing under seal is allowed to show failure of consideration, he is not allowed, in the absence of fraud, to show that such instrument was without consideration, the reason being that the seal, of itself, imports a consideration." *Bandy v. Bandy*, 187 S. C. 410, 197 S. E. 396, 397. But this rule does not prevail in an action in equity for specific performance. In 49 Am. Jur., Specific Performance, Section 17, we find: "In order to secure the specific performance of a contract, the plaintiff must show that it is founded upon a valuable consideration, equity will not enforce an agreement which is not supported by actual and valuable consideration, as, for example, a promise without consideration to transfer stock. Even where, at law, consideration is implied, as in the case of a sealed instrument, it has been held that in equity lack of consideration may be shown to defeat specific performance. * * * Generally, where a contract is entirely voluntary or without consideration, or is in effect and substance a mere gift, even though one for the conveyance of land, it will not be specifically enforced, for equity will not compel a party to be generous." In *Kaiser v. Cobbey*, 400 Ill. 214, 79 N. E. (2d) 604, 607, the Court, in discussing this question, quoted from various textwriters, including the following from 3 Pomeroy's Eq. Jur. (3d Ed.) Section 1293: "Equity will never enforce an executory agreement unless there was an actual valuable consideration, and unlike the common law, it does not permit a seal to supply the place of a real consideration. Disregarding mere forms and looking at the reality, it requires an actual valuable consideration as essential in every such agreement, and

allows the want of it to be shown, notwithstanding the seal, in the enforcement of covenants, settlements, and executory contracts of every description." Also, see 81 C. J. S., Specific Performance, § 39, p. 508.

It is quite clear that the Court below was in error in ▌ refusing to consider the testimony showing lack of consideration. It is patent from the instrument itself that it was a mere gratuitous promise. The fact that Mrs. Black might have deemed the establishment of this trust to be for the best interests of herself and her children does not alter the voluntary character of the agreement. Apart from this instrument, her testimony that she received no actual consideration stands uncontradicted on this record. Neither the Referee nor the Circuit Judge refers to any other testimony on the issue of consideration and if any was offered, respondents should have included it in the record.

We conclude that the Court below was in error in ▌ requiring Mrs. Black to perform her agreement to deliver this stock. Appellants' exceptions relating thereto are sustained and this portion of the circuit decree is reversed. The cross-action should have been dismissed. In all other respects the circuit decree is affirmed.

Affirmed in part and reversed in part.

TAYLOR, Acting C. J., LEGGE and MOSS, JJ., and STEVE C. GRIFFITH, Acting Associate Justice, concur.