## 20730

SOUTHERN BANK AND TRUST COMPANY, as Co-executor and Co-trustee of the Estate of Arthur Brown, Respondent, v. Glenda C. BROWN, Karen Grace Brown, Eugene Brown, Eugene Brown, Jr., June Brown Broome, George Daniel Broome, Charles Van Brown, Jon Brown, Rose Brown Cashin, Jo Ann Summey, Cheryl Ann McDowell, James Arthur Cashin, Margaret Rose Fisher, Judy Summey and Joseph Calvin Summey, Jr., Appellants, and June Brown Broome and George Daniel Broome, Respondents.

(246 S. E. (2d) 598)

*W. Jerry Fedder,* Seneca, *for appellants Glenda C. Brown* and *Karen Grace Brown.*

*Larry C. Brandt,* Walhalla, *for appellants Eugene Brown et al.*

*Alexander S. Macaulay* of *Miley, Macaulay & Boggs,* Walhalla, *for respondents June Brown Broome* and *George Daniel Broome.*

*Thomas H. Coker, Jr., Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondent Southern Bank & Trust Co.*

July 31, 1978.

LEWIS, Chief Justice:

Respondent Bank, as a named co-executor of the Will of Mr. Arthur Brown, deceased, and a co-trustee of a trust created by its provisions, brought this action to have the court determine the validity and legal effect of certain portions of the will, alleging that it was unable to determine to whom the estate should be distributed and to perform its duties as executor and trustee without such determination. The issues were decided in the lower court by the late lamented Honorable E. Harry Agnew, Resident Judge of the Tenth Judicial Circuit.

In Item V of the will, the testator created a trust and the primary issue in this appeal is whether this testamentary trust violates the rule against perpetuities. The trial judge properly resolved this issue in favor of the trust.

Item V, paragraph 11, of the will governs the termination of the trust and gives rise to the alleged perpetuities violation. This paragraph is as follows:

11. Upon the death of my last surviving grandchild, this trust shall terminate, and the *corpus* thereof shall be divided into equal parts, one of which shall go, *per stirpes,* to the issue of each of my twelve grandchildren, June Brown, George P. Brown, Jr., Charles Rodney Brown, Cheryl Ann Cashin, James Arthur Cashin, Eugene Brown, Jr., Charles Van Brown, Jon Brown, Margaret Rose Summey, Judy Summey, Joseph Calvin Summey, Jr., and Karen Grace Brown, who die leaving issue then surviving, to be their property absolutely.

It is evident that the testator attempted to delay the time at which the ultimate beneficiaries would receive a vested interest in his property. The question then

is whether the testator postponed the vesting of this interest beyond the time permitted by law. The length of postponement permitted was defined in *Turner v. Turner,* 260 S. C. 439, 196 S. E. (2d) 498, as follows:

No interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest.

The trial judge correctly pointed out that "this rule strikes down a contingent interest which may not vest or fail to vest within lives in being plus 21 years from the creation of the interest. If the measuring lives are in being at the creation of the interest, the date of Arthur Brown's (testator's) death, the will does not violate the rule against perpetuities and, accordingly, this provision would not fail."

The interpretation of Item V, paragraph 11, of the will, therefore, turns upon a determination of the class of lives used to measure the duration of the trust. The trial judge properly construed the provisions of the will in question as designating the twelve named grandchildren as the proper measuring lives. The following from his order correctly sets forth the basis from such conclusion:

"In this provision of his will, the testator created a class of measuring lives consisting of his [named] grandchildren. If the class of measuring lives is construed to be all of Arthur Brown's grandchildren, the bequest would fail because Arthur Brown had children in being at the time of his death and each of these children would be presumed capable of having additional children. *Love v. Love,* 208 S. C. 363, 38 S. E. (2d) 231 (1946). In this case, however, in the provision creating the class of measuring lives, the testator actually named 12 grandchildren. Although the instrument only provides that 'upon the death of my last surviving grandchild' the testator's intention is clear: the class of measuring lives should only be determined by the 12 grandchildren named in the paragraph creating the interest, and not the class of all grandchildren. Testator's only purpose in naming

the 12 grandchildren in that paragraph was to define the class of measuring lives. Since that class is defined and all of those named were in being at the death of the testator, the ultimate takers would take upon the death of those named, all of whom were *in esse* at the creation of the interest. The gift must prevail because the vesting would occur at the death of those named in the instrument clearly within the time permitted by the rule. The fact that testator named the 12 grandchildren which were in being at his death indicates the intention to use those lives as the measuring lives for the purpose of determining the vestiture of the remainder of the estate. It is this intention of the testator which should be used in the construction of this will. *Black v. Gettys,* 238 S. C. 167, 119 S. E. (2d) 660 (1961) ; *Peoples National Bank of Greenville v. Harrison,* 198 S. C. 457, 18 S. E. (2d) 1; and, *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637."

As stated in *Black v. Gettys, supra,* the cardinal rule of construction is to ascertain and effectuate the intention of the testator, unless the testator's intention contravenes some well settled rule of law or public policy.

A violation of the rule against perpetuities would of course, violate public policy and defeat intent. The following from 2 Tiffany Real Property, Third Edition, Section 393, succinctly sets forth the governing principles :

The rule is one of law, and not a rule of construction, and it is to be applied even if it renders the expressed intent of the testator impossible of accomplishment. It is not a test to determine intention, but its object is to defeat intention. However, when the testator's provision is ambiguous and fairly capable of either of two constructions, one of which would produce a legal result and the other a result bad for remoteness, it may be presumed that the legal result was intended.

See also: 61 Am. Jur. (2d) *Perpetuities, etc.,* Section 9; 4 Restatement of the Law of Property, Section 375 (1944) ; 70 C. J. S. *Perpetuities* §§ 35 and 36.

The application of the rule to an ambiguous provision is thus stated in § 36 of the C. J. S. citation:

Notwithstanding the principle that the rule against perpetuities is not one of construction, . . ., where there is any ambiguity in the provisions of an instrument creating or transferring an interest or estate in property, the courts will incline to such construction as makes it consistent with the rule, under the doctrine that a construction should be favored which gives effect to intention rather than one which defeats it.

The last stated principle is in accord with the generally recognized rule that, if a person makes a will, he is presumed not to intend to die intestate as to any of his property. It is, therefore, presumed that the testator intended to make a valid and not a void disposition of his property. The statements in our cases support this view. In *Spell v. Traxler,* 229 S. C. 466, 93 S. E. (2d) 601, it was stated: "The law abhors intestacy and will indulge every presumption in favor of the validity of the will."

The provisions of the present will clearly show an intent to limit the class of grandchildren to those named. He not only named the twelve grandchildren but expressly provided that their issue would receive the *corpus* of the trust, fixing the distributive shares by the number of the named grandchildren, who were in existence at the time he made his will. The termination of the trust and division of the *corpus* is fixed at the time of "the death of my last surviving grandchild." The term "surviving" must be construed to have meaning. In view of the fact that twelve grandchildren are named, the phrase "last surviving grandchild" may clearly mean the last surviving grandchild of the twelve named in Item V, paragraph 11. This construction would render the trust valid because all of the named twelve were in being at the creation of the interest.

Appellants would interpret the phrase "last surviving grandchild" to mean the last grandchild surviving any and

all possible grandchildren. It is conceded that, under this interpretation, a perpetuities violation, would result. The fact that this construction may be indulged would not require that the trust be invalidated, since there is another reasonable construction which would render the trust effective. At the most, an ambiguity would exist, making it proper, under the foregoing principles, to effectuate that alternative construction which renders the rule against perpetuities inapplicable and the trust fund.

The lower court properly upheld the validity of the trust.

The remaining questions charge that the trial judge erred in holding that:

(1) Item V, paragraphs 5 and 6 of the will limited the expenditure by the trustees for the construction of a home for the testator's wife and daughter to no more than the sum of $35,000.

(2) Item III of the will devised to the testator's widow 1/6 of his entire estate, undiminished by the value of the items passing under Item II of the will.

(3) The gift of a two acre tract to a daughter and the widow of the testator in Item V, paragraphs 5 and 6, is valid despite the failure of the testator to attach a plat of the property from which the selection of the tract was to be made.

(4) The term "education", as used in Item V, paragraphs 9 and 10, mean any education to a bachelor's degree.

(5) Item IV, paragraph 8, of the will required the trustees to deduct twenty-five thousand ($25,000) dollars from any income due Eugene Brown, and to divide such withheld funds among the other beneficiaries.

*As to questions 1 and 3:* Item V, paragraphs 5 and 6, provide that the testator's wife and his daughter, Elva Brown, are each to have set aside to them a two acre trace of land and to have constructed thereon "a one-story, three-bedroom home costing approximately $35,000-.00." The two acre tracts were to be set aside from a thirty

acre tract as shown on a particular plat attached to the will. There was no plat attached to the will. In fact, the testimony shows that the plat in question was never completed.

It is contended, first, that the gifts of the two acre tracts to testator's wife and daughter were invalid because of the failure of the testator to attach the plat of lands from which the tracts were to be selected. The trial judge correctly upheld the validity of these gifts because the extrinsic testimony clearly identified the thirty acre parcel from which the two acre tracts were to be selected.

The trial judge was in error, however, in holding that "when the testator chose the amount of $35,000.00 for the value of the home . . ., he meant exactly that amount." The will provides that there would be constructed, on the two acre tracts devised to the wife and daughter, homes "costing approximately $35,000.00." The word "approximately" is an indefinite word and is given a narrow or broad meaning upon the circumstances. It is generally defined as reasonably close to, nearly, almost, or about the amount or quantity specified. *Sutcliffe v. Laney Bros., Inc.,* 247 S. C. 417, 147 S. E. (2d) 689.

The will was executed in March 1974 and the use of the word *approximately* indicated that the Trustees should be allowed some discretion in the construction of the home. The range of that discretion must be determined in the light of the circumstances and cannot be defined under this record with mathematical exactness. How near the cost of the home should be held to the specified figure must be determined by the lower court under the facts, and this issue is remanded to the lower court for that purpose.

The second question challenges the holding of the lower court that the widow of the testator should receive, under Item III, 1/6 of the entire estate undiminished by the value of the items devised to her under Item II and, inferentially, under other provisions of the will.

In Item II, the testator bequested to his wife "all ornaments, furniture, rugs, pictures, books, bric-a-brac, utensils and household effects and equipment of every name and nature whatsoever, which I may own at the time of my death, and I also give and bequeath unto my said wife all farm machinery and equipment, farm trucks, earth moving machinery and equipment, all automobiles, accessories and equipment, jewelry, articles of apparel or personal adornment, and articles of domestic or personal use of which I may die seized or possessed; . . ."

Following the bequest in Item II, the testator devised to his wife, in Item III, "one-sixth (1/6) of my estate, real, personal and mixed, of every kind and description, to be her property absolutely." And, in Item IV, the testator provided that any debts owed to him by his wife at the time of his death "shall be forgiven and that she not be required to pay, or to account, for any such sums." In Item V, provisions are made for the "rest and residue" of the estate and includes the wife as an income beneficiary of the trust.

It is contended that the specific gift in Item II reduced the gift of one-sixth of the estate devised in Item III; in other words, the widow was limited to one-sixth of the estate *only* and the value of the articles described in Item II should be off-set against the devise of one-sixth in Item III.

The trial judge held, and we agree, that it was the intention of the testator to devise to his wife one-sixth of his estate undiminished by the value of the items bequested to her under Item II of the will and, inferentially, undiminished by any cancellation of indebtedness due by the wife as provided in Item V.

The testator clearly expressed his intention that the devise to the wife in Item III should not be diminished by any other provisions for her. Item III provides that the wife receive one-sixth of the "estate, real, personal and mixed, of every kind and description." No clearer language could have been used to express an intent that the one-sixth interest is to be

of the *entire estate*. The entire estate includes the items bequeathed to the wife in Item II. In order to reach the result urged by appellants, we would have to write into the language of Item III exclusions which the testator did not express and which the language he did use clearly shows that he did not intend. This we are not permitted to do.

*See In Re Mass' Will*, Sur., 65 N. Y. S. (2d) 93; Annotation: 169 A. L. R. 903.

The provisions of the will show unmistakably the intentions of the testator for his wife. The bequests in Item II of the numerous items of personal property, the devise in Item III of one-sixth of his estate, the cancellation of any indebtedness of the wife to him as provided in Item IV, and the inclusion of the wife as an income beneficiary of the trust in Item V, show the testator's regard for his wife and his intention to provide liberally for her. The suggested exclusion of the property in Item II from the testator's estate "of every kind and description," as described in Item III, is contrary to every intention manifested in the will.

Appellants next challenge the interpretation of the term "education" as used in Item V, paragraphs 9 and 10, of the will. These provisions permit the trustees to provide funds for the "education" of the issue of the testator. The lower court construed the word *education* "to mean any education up to a bachelor's degree."

Appellants argue, however, that the testator intended to provide funds for an education beyond the four-year academic level.

*Education* is a broad and comprehensive term and its particular meaning must be determined by the context in which it is used.

The testator, in this case, provided that the Trustees were authorized to use, if necessary, portions of the *corpus* of the trust to provide funds for the "education" of his surviving

issue. The parties agree that the testator intended, by such provision, to include funds for a formal education, including college. This would ordinarily mean any education through a course of study requiring four years for completion and leading to a Bachelor's degree. See *Epstein v. Kuvin,* 25 N. J. Super. 210, 95 A. (2d) 753; Annotation: 36 A. L. R. (2d) 1323. Such interpretation accords with traditional concepts where there is a duty and ability to provide a formal education.

We find nothing to indicate that the testator intended to provide funds for the unlimited pursuit of an education, and the trial judge properly determined that the term "education," should be interpreted, when applied to a college education, to mean that a Bachelor's degree is the ultimate expenditure for education authorized by the testator.

The last question concerns the proper interpretation of a provision of paragraph 8, Item V, relating to the bequest of income from the trust to the testator's son, Eugene Brown.

In paragraph 8, of Item V of the will, the testator directed the division of the net income to the trust in certain proportions among certain persons, one of which was his son, Eugene Brown, who was to receive one-fifth (1/5) of such income. After directing the payment of the net income to the beneficiaries in stated proportions, the testator directed as follows:

My trustees will deduct from the portion of the income otherwise allocated to my son, Eugene Brown, the sum of $25,000.00 and divide this sum among the other beneficiaries named in this paragraph (8) in proportion to their income sharing ratio.

The testator provided no other income to Eugene Brown and the present question arises because the $25,000.00, referred to in the above quoted provision, is to be deducted from "the income otherwise allocated to . . . Eugene Brown."

It is argued that, since the testator had previously in Item V directed the Trustees to pay a specified portion of the net income to Eugene Brown and there was no other income allocated to him, this bequest could not be cut down or destroyed by the superadded words in the same item, which directed a division of a portion of such income to other beneficiaries, relying upon the rule stated in *Hutto v. Ray,* 192 S. C. 364, 6 S. E. (2d) 747 that

when a gift is made in one clause of a will in clear and unequivocal terms, the quantity or quality of the estate given should not be cut down or qualified by words or doubtful import found in a subsequent clause. To have that effect, the subsequent words should be at least as clear in expressing that intention as the words in which the interest is given.

We agree with the trial judge that the clear and unequivocal language used leaves no doubt as to the testator's intent. All of the pertinent language is found in Item V, paragraph 8(3), in which the testator deals solely with the distribution of the net income from the trust. The testator clearly stated that the first twenty-five thousand ($25,000.00) dollars which Eugene Brown would have received under Item V, paragraph 8(3), must be withheld for distribution among the other income beneficiaries named in paragraph 8. The phrase "otherwise allocated" refers to the fact that Eugene Brown was given one-fifth (1/5) of the net income which he would have received but for the specific direction that $25,000.00 must first be deducted.

The language in question is not of doubtful import but clearly expresses the intent of the testator that $25,000.00 of the income allocated to Eugene Brown must be deducted and divided among the other beneficiaries. The trial judge properly held that this provision must be enforced in accordance with such interpretation.

Judgment is accordingly affirmed as modified and remanded for further proceedings as set forth herein.

LITTLEJOHN, NESS and RHODES, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.