# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Spring Valley Interests, LLC, Appellant,

v.

The Best for Last, LLC, Respondent.

Appellate Case No. 2022-000813

———————

Appeal From Richland County
Jocelyn Newman, Circuit Court Judge

———————

Opinion No. 6070
Heard May 15, 2024 – Filed July 10, 2024

———————

## AFFIRMED

———————

Kenneth Ray Raynor, of Raynor Law Firm, PLLC, of
Charlotte, North Carolina, for Appellant.

Kirby Darr Shealy, III, of Adams and Reese LLP, and
Luke M. Allen, both of Columbia, for Respondent.

———————

**KONDUROS, J.:** Spring Valley Interests, LLC (Spring Valley) appeals the
circuit court's order finding void a contractual purchase option (Purchase Option)
for a portion of property owned by The Best for Last, LLC (Best). The circuit
court found the Purchase Option was void pursuant to the common law Rule
Against Perpetuities (CLRAP). Spring Valley argues this was error because the
CLRAP has been preempted by the South Carolina Uniform Rule Against
Perpetuities (SCURAP), which would provide protection to Spring Valley under
the facts of this case. We affirm.

**FACTS/PROCEDURAL BACKGROUND**

On or about May 3, 2017, Spring Valley's predecessor, White Interests Limited Partnership (White), entered into an agreement (Loan Agreement) with Best, wherein White loaned $800,000 to Best. Best used the loan proceeds to purchase certain real property located in Columbia (the Property). As part of the consideration for the loan, Best granted White a freely assignable and perpetual option to purchase a 74.425% undivided co-tenancy interest in the Property. The Purchase Option, set forth in Section 2 of the Loan Agreement, specifically provides:

> Lender's Purchase Option. I[n] consideration for making the Loan, the Borrower hereby grants to Lender the perpetual option to purchase a 74.425% undivided co-tenancy interest in the Property (the "Purchase Option") for a purchase price of Eight Hundred Thousand and 00/100 Dollars (the "Purchase Price."). The Purchase Option shall be exercised at the Lender's sole discretion by delivery of a written notice no later than thirty (30) days before the intended closing. The Purchase Price shall be paid in cash or immediately available funds at the Closing. The Lender shall hold take [sic] title to the co-tenancy interest subject to (1) no mortgages other than the Borrower's then outstanding first lien mortgage, and (ii) a mutually acceptable co-tenancy agreement. The Purchase Option is freely assignable by the Lender.

White assigned its right to exercise the Purchase Option to Spring Valley.

On August 21, 2019, Spring Valley sent Best a letter entitled "Notice of Exercise of Option to Purchase." The letter notified Best that Spring Valley was exercising its option to purchase a 74.425% undivided co-tenancy interest in the Property. Best objected to the exercise of the option and insisted that Spring Valley exercise the option by becoming a member of Best. The parties engaged in negotiations and nearly came to an agreement but for Spring Valley's insistence on certain attorney's fees.

Spring Valley filed a complaint seeking specific enforcement of the Purchase Option and reformation of the Loan Agreement. Best filed an answer asserting defenses including that the Purchase Option was void because it violated the

CLRAP. Best eventually filed a motion for summary judgment as to the specific performance claim, which the circuit court granted based on the following:

> The Uniform Statutory Rule Against Perpetuities (USRAP) does not apply in this case. Generally, the USRAP supersedes the common law rule against perpetuities. S.C. Code Ann. [§] 27-6-80 [(2007)]. However, USRAP does not apply to nonvested property interests arising out of a [non]donative transfer. S.C. Code Ann. [§] 27-6-50(1) [(2007)]. Here, the basis of the parties' arguments concerns—a nondonative transfer—the commercial transaction involving the purchase option. Because USRAP does not apply to nondonative transfers, the USRAP cannot supersede or replace the common law, thus the common law is the appropriate legal standard to conclude that the purchase option is unenforceable.

This appeal followed.

**STANDARD OF REVIEW**

"When reviewing a grant of summary judgment, an appellate court applies the same standard used by the trial court." *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 109, 662 S.E.2d 40, 41 (2008). "A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 109-10, 662 S.E.2d at 41 (citing Rule 56(c), SCRCP). "Determining the proper interpretation of a statute is a question of law, and this [c]ourt reviews questions of law de novo." *Id*. at 110, 662 S.E.2d at 41.

**LAW/ANALYSIS**

I.    **Preemption of the CLRAP by the SCURAP**

Spring Valley maintains because the CLRAP was preempted by the SCURAP, the circuit court erred in concluding the CLRAP[1] prevented the Purchase Option from being enforceable. We disagree.

Section 27-6-20(A) of the South Carolina Code (2007), provides: "A nonvested property interest is invalid unless: (1) when the interest is created, it is certain to vest or terminate no later than twenty-one years after the death of an individual then alive; or (2) the interest either vests or terminates within ninety years after its creation." However, section 27-6-50 of the South Carolina Code (2007 & Supp. 2023) exempts certain property interests from that provision. It states "[s]ection 27-6-20 does not apply to (1) a nonvested property interest or a power of appointment arising out of a nondonative[2] transfer . . . ." Two other sections comment on the scope of the SCURAP. Section 27-6-60(A) of the South Carolina Code (2007) provides: "[T]his chapter applies to a nonvested property interest or a power of appointment that is created on or after July 1, 1987." Section 27-6-80 instructs that "[t]his chapter supersedes the common law rule against perpetuities."

Spring Valley argues section 27-6-50, which makes section 27-6-20 inapplicable to nondonative transfers, combined with section 27-6-80, superseding the common law, removes nondonative transfers completely from any application of the RAP—either the statutory iteration or at common law. With regard to section 27-6-20, subsection (A)(1) is simply a restatement of the CLRAP. Subsection (A)(2) provides for a ninety-year wait-and-see period that would likely save otherwise violative transfers. Therefore, subsection (A)(1) cannot doom the commercial transfer in this case, but subsection (A)(2) cannot save it or provide a mechanism to delay a declaration of the transfer as void. The conundrum then is how does section 27-6-80 affect transfers to which the statutorily stated SCURAP and wait-and-see provision do not apply.

Supersede is defined in Black's Law Dictionary as "obliterate, set aside, annul, *replace*, . . . [t]o set aside." *Supersede, Black's Law Dictionary* (6th ed. 1990). "A rule of statutory construction is that any legislation which is in derogation of common law must be strictly construed and not extended in application beyond clear legislative intent." *Doe v. Marion*, 361 S.C. 463, 473, 605 S.E.2d 556, 561 (Ct. App. 2004). Therefore, a statute is not to be construed in derogation of

---

[1] The CLRAP mandates that any interest not certain to vest within a life in being plus 21 years is void. *Black v. Gettys*, 238 S.C. 167, 176, 119 S.E.2d 660, 664 (1961).

[2] The parties do not dispute that this case involves a nondonative transfer.

common law rights if another interpretation is reasonable. *Hoogenboom v. City of Beaufort*, 315 S.C. 306, 318 n.5, 433 S.E.2d 875, 884 n.5 (Ct. App. 1992). In this case, subsection 27-6-20(A)(1), containing the statutory expression of the RAP, does not apply to nondonative transfers. Therefore, it cannot supersede or replace the CLRAP with regard to nondonative transfers, which are expressly excluded.

Faced with the identical question, the North Carolina Court of Appeals has addressed this issue applying its prior version of the URAP that mirrored our own. In *New Bar Partnership v. Martin*, the court concluded the following: (1) the USRAP does not apply to nondonative transfers; (2) commercial transactions such as the commercial lease in that case are nondonative transfers; and (3) the CLRAP applies when the USRAP does not and therefore applies to commercial transactions. 729 S.E.2d 675, 683 (N.C. Ct. App. 2012). While North Carolina law is not controlling, our courts have found it persuasive, particularly when considering comparable statutes. *See Parrott v. Barfield Used Parts*, 206 S.C. 381, 396, 34 S.E.2d 802, 804 (1945) ("[W]hile of course not binding upon this [c]ourt, [the North Carolina case] is highly persuasive, because it relates to practically the same question now under consideration, and the North Carolina Act is substantially the same as ours as to the particular sections involved . . . .").[3]

We recognize that North Carolina, in 2022, revised its version of the USRAP to state the legislation "abolished" the CLRAP. *See* N.C. Gen. Stat. § 41-6.5(c) (2022) ("This section clarifies the intent of the General Assembly to abolish the common-law rule against perpetuities when it enacted Chapter 190 of the 1995 Session Laws, which enacted the Uniform Statutory Rule Against Perpetuities."). Nevertheless, *New Bar* has not been overruled by an appellate court. Furthermore, while most of the states that have adopted the USRAP seem to conclude its adoption removed commercial transactions from the purview of both the CLRAP and the USRAP, South Carolina was the first state to adopt the USRAP in 1987. *See* John A. Borron, Jr., 3 Simes and Smith, *The Law of Future Interests*, § 1451 (3d ed. 2002) ("South Carolina was the first state to adopt the Uniform Act."). Consequently, we cannot say with certainty that the "abolishment" of the CLRAP was our legislature's intent at the time. Unlike North Carolina, South Carolina did not pass any companion statutes regarding commercial transfers that would have moderated the effects of the abolition of the CLRAP. *See* N.C. Gen. Stat. Ann. § 41-29 (1995) ("An option in gross with respect to an interest in land or a

---

[3] This quoted language is from the circuit court's order, which was reported with the supreme court's opinion and cited with approval. *See Parrott*, 206 S.C. at 402, 34 S.E.2d at 806.

preemptive right in the nature of a right of first refusal in gross with respect to an interest in land becomes invalid if it is not actually exercised within 30 years after its creation."); *see also* N.C. Gen. Stat. Ann. § 41-30 (1995) ("A lease to commence at a time certain or upon the occurrence or nonoccurrence of a future event becomes invalid if its term does not actually commence in possession within 30 years after its execution. For purposes of this section, the term 'lease' does not include an oil, gas, or mineral lease."). These statutes would have prevented many commercial transactions from falling into a RAP vacuum if the CLRAP did not apply.

Moreover, the complete abolition of the CLRAP without some provision for limitations in commercial transactions risks putting two legal principles at odds—freedom to contract and restrictions on alienability. Generally, parties are free to contract for terms upon which they agree subject to reasonable regulations to protect an overriding public interest. *S.C. Dep't of Consumer Affs. v. Rent-A-Ctr., Inc.*, 345 S.C. 251, 255, 547 S.E.2d 881, 883 (Ct. App. 2001). One such parameter is prohibiting the enforcement of unreasonable restrictions on alienation of real property. *Wise v. Poston*, 281 S.C. 574, 579, 316 S.E.2d 412, 415 (Ct. App. 1984) ("Under South Carolina common law, any unreasonable limitation upon the power of alienation is against public policy and must be construed as having no force and effect.").[4] Consequently, because we can construe the SCURAP in a manner that preserves the common law, we affirm the circuit court's ruling finding the purchase option void under the CLRAP.

## II. Implied Term of a Reasonable Time

Spring Valley next contends an implied term exists in the contract that the Purchase Option would be exercised within a reasonable time to prevent the Purchase Option from violating the CLRAP. We disagree.

---

[4] While a claim for unreasonable restriction examined under the auspices of the Restatement provides a vehicle to call commercial transfers into question, in the absence of clear intent from the legislature, we are inclined to construe the USRAP in a way that preserves the common law. *See* Restatement (Third) of Property (Servitudes) § 3.4 (2000) ("Reasonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint.")

Initially, whether this contention is preserved for appellate review is questionable. In its reply brief, Spring Valley points to the following argument it made before the circuit court to demonstrate it preserved this issue:

> [O]ne thing, too; I, I talked about the, you know, the rules for commercial transactions are different. One of the differences of the, one of the differences of the -- including these estate kind of, kind of transfers that a commercial transfer -- courts, including courts in South Carolina where no date is stated in a commercial transfer for something to be accomplished, courts routinely apply a reasonable date. And so that in and of itself is a kind of illustration of why commercial cases were excluded, but that would apply in this case.

The circuit court's order does not mention any implied or reasonable term in the contract. Even if the argument was sufficiently raised to the circuit court, Spring Valley did not seek a ruling on this point and argues on appeal the court's order implicitly rejected this argument. Therefore, the preservation of this argument is suspect. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 302, 641 S.E.2d 903, 907 (2007) ("To successfully preserve an issue for appellate review, the issue must be: '(1) raised and ruled upon by the trial court; (2) raised by the appellant; (3) raised in a timely manner; and (4) raised to the trial court with sufficient specificity.'" (quoting Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 57 (2d ed. 2002)). However, "where the question of issue preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation." *Johnson v. Roberts*, 422 S.C. 406, 412, 812 S.E.2d 207, 210 (Ct. App. 2018) (quoting *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 333, 730 S.E.2d 282, 287 (2012) (Toal, C.J., concurring in result in part and dissenting in part)).

On the merits, Spring Valley's argument is unavailing. In *Clarke v. Fine Housing, Inc.*, 438 S.C. 174, 882 S.E.2d 763 (2023), our supreme court rejected the notion that an implied "reasonable time" served to insulate a right of first refusal from a reasonableness examination under the Restatement.

> Clarke's . . . suggestion that the law implies a "reasonable time" within which he could exercise the Right [of first refusal is] without merit. . . .

. . . Clarke misses the point of the Restatement approach by arguing a court can simply imply a reasonable time requirement in which a right of first refusal must be exercised. The whole point of the Restatement is to predetermine a limited time within which a right of first refusal must be exercised to protect the owner's power of alienation.

A judicially implied "reasonable time" requirement would do little to protect the owner's power of alienation. Lengthy litigation over what is or is not a reasonable time under the facts of any given case will necessarily restrain alienation.

*Id. at* 186-87, 882 S.E.2d at 769-70. For the same reasons, implying a reasonable time in a purchase option subject to the CLRAP undercuts the point of preserving an owner's power of alienation. Consequently, we reject Spring Valley's contention.

## III. Waiver—Additional Sustaining Ground

Finally, Best argues as an additional sustaining ground that Spring Valley waived its right to exercise the Purchase Option by negotiating with them to reach a satisfactory resolution outside the basic parameters of the Purchase Option. Because we find the Purchase Option is void, we decline to consider the issue of waiver. *See Whiteside v. Cherokee Cnty. Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (appellate court need not address remaining issues when disposition of prior issue is dispositive).

Based on all of the foregoing, the order of the circuit court is

**AFFIRMED.**

**WILLIAMS, C.J., and VINSON, J., concur.**